called attention. These statutes have relieved the railroad company from the petty restrictions contained in the franchise contract, and these enlarged privileges have been accepted and acted upon, entailing the obligation of discharging the duties prescribed by such statutes. It is difficult to understand, conceding that asphalt is more expensive than water stone, how the railroad company can be seriously disadvantaged by a provision of the statute that it shall keep the pavement between its tracks and two feet outside in repair under the direction of the local authorities, in place of the old provision that it should keep a space of three feet outside in repair with the best water stone. It has an advantage of two running feet along its tracks over the old contract, which ought to compensate in a large measure at least for the added cost of asphalt by the square yard. This is not of importance in the disposition of the question, but is suggested as showing that from an equitable standpoint the railroad company has no valid cause for complaint.

The judgment and order as against both defendants should be affirmed, with costs. All concur.

<hr />

(79 App. Div. 174.)

SMITH et al. v. BARTLETT.

(Supreme Court, Appellate Division, Second Department. January 9, 1903.)

1. WILLS—CONSTRUCTION—PROPERTY DEVISED.

　　The holder of a patent, dated October 9, 1693, of a tract of land on Long Island, divided in part by a navigable stream, devised by will one portion thereof to his eldest son, and another portion, "on the west side of the stream," to his two daughters, and the remaining portion, which he described as all his land on the south side of the island, within "my manor of St. Georges aforesd and being esteward of" the above river, to his youngest sons. *Held*, that such devise to his youngest sons was in the nature of a residuary devise of all the remaining lands, and did not limit the devise to the lands lying eastward of the river.

2. SAME.

　　Where a patentee devised all the lands on the west side of a certain stream to his daughters, and the remaining portion of his lands to his sons, the land passing to the daughters only extended to the bank of the river, and the land under the river passed to the sons.

3. SAME.

　　The construction given to a will by the members of testator's family is a circumstance entitled to weight in construing the will, though not conclusive.

Appeal from Special Term, Suffolk County.

Action by William E. T. Smith and others against John J. Bartlett. From a judgment for plaintiffs, defendant appeals. Affirmed.

The following is the opinion of Mr. Justice WILMOT M. SMITH, delivered at Special Term:

It is not enough that the plaintiffs have the legal title to the premises in controversy, to maintain this action. They must, in addition thereto, have had actual possession thereof for the statutory period. The premises consist of land under navigable water. The evidence shows that the plaintiffs have had all the possession of the premises which is possible, considering the nature of the property, so that they are entitled to the judgment they demand, provided they establish their legal title. The property is a portion

of the land included in the patent to Colonel William Smith from Colonial Governor Fletcher, dated October 9, 1693. This patent conveyed very large tracts of land on both sides of Long Island, in the town of Brookhaven; the tract on the south side of the island, being described in the patent as follows:

"Bounded westward from the maine sea or occian to the westermost bank of a river called East Connecticut, and soe along the banke of the sd river to a creek running out of the sd river, called Yaphanke, and soe along the southwest bank of ye sd creek unto its head, the whole creek included, to a marked pine tree at ye head of ye sd creek, and soe in a direct north lyne until it comes to the bank of Connecticut River aforesd, to a marked tree on the west syde of said river; and fro thence alongst the westermost bank of sd river unto ye sd river head, ye whole river and all ye branches thereof included and from thence alongst ye west syde of Connecticut Hollow to the county roade near ye middle of the island aforesd, to a markt tree there, the whole hollow included, and soe bounded northward by ye sd country road to another marked tree, being distant one fro ye other ffive miles and a halfe, and so in a direct south lyne from the eastermost marked tree near the country road aforsd to a pyne tree marked with W. S. and three notches, at the head of the maine branch of Mastick River, and fro thence alongst the eastermost bank of sd river, the whole river and all its branches included to the maine sea; * * * as also one tract of beach, meadow and bay lying along the south syde of the island aforesaid with all the islands in the sd bay between the maine Island aforesd and the beach aforesd, from a certain Gutt or inlett westward, commonly called Huntington East Gutt to a certain stake on the beach eastward, to a place called Coptwange, being the towne of Southampton westermost bounds; the sd beach and bay being from the East to the west bounds twenty ffour miles and seven chaines, as by the returne of our sd surveyor, relation being thereunto had, may more fully and at large appear."

The patentee died about 1704, leaving a last will and testament dated April 23, 1704. In my opinion, the determination of this action depends upon the true construction to be placed upon the provisions of this will. Both counsel concede that the testator intended to, and did, devise all his estate by his will. The presumption is always strong against partial intestacy; and this will, in every portion of it, gives evidence that the testator intended to dispose of all his property. Every contingency was provided for, and the testator employed language which he believed was sufficient to include all his estate. His property on the south side of the island was divided into three portions. To his eldest son, Henry, he devised all that portion of the South Beach westward to Long Cove; to his daughters, Jeane and Gloriana, he devised all his lands on the west side of the Connecticut river, as described in the patent. Under the devise to the daughters the defendant claims title. These devises were specific, and no question arises as to the definite character of the boundaries of the premises devised.

If it be assumed that the will disposed of all the testator's estate, the third portion embraced all his remaining lands, of every description, on the south side of the island, and was devised jointly to his sons William Henry and Charles Jeffrey. While not in form a residuary devise to his two sons William Henry and Charles Jeffrey, in substance and effect that was the result intended and accomplished. In his devise to his two sons he uses this language: "I doe give and bequeath after his mother's death as is aforesaid my house on the south side of this island within the mannor of St. Georges, which standes on Sebornucke Necke, with a full moyety, or halfe part of all my land and meadow on the south side of this island within my manor of St. Georges aforesd and being esteward of Conecticut or Sebomuck River." Counsel for the defendant claims that by the use of this language the testator intended to make the river the western boundary line of the land devised jointly to the two sons, and that they only took to the center of the river opposite to the land devised to the daughters. I am of the opinion that the words "being esteward of Conecticut" river, following after a general devise of "all my land and meadow on the south side of this island within my manor of St. Georges," were intended simply to exclude the lands devised to the daughters, which would be otherwise included, and not to limit the

devise to the two sons to the lands lying eastward of the river. The great, portion of the bay described in the patent lying between the beach and main island, some miles in width, and extending nearly twenty miles to the westward to Huntington East Gut, with all the islands therein, did not lie eastward of the Connecticut river, and yet the testator intended to devise that great tract to his two sons.

The devises to his son Henry and to his daughters were insignificant in comparison with the devises to the two younger sons, as will be seen by reference to the patent. The testator evidently intended that the great bulk of his estate should be kept intact and transmitted to his two younger sons. I think, therefore, that the devise to the two daughters and to the eldest son should be strictly construed, as they were cut off from the great body of his land, thus intended to be kept together as a great tract of beach, uplands, islands, and land under water. There is no evidence how far north the tide ebbs and flows in the Connecticut river. The ebb and flow extends above the premises in controversy. There is no evidence that the ebb and flow would not reach as far north as the point where a north line from the head of Yaphank creek reaches the river, if the river was not obstructed by a dam. A boundary by a navigable river only extends to its bank. The devise to the daughters is of land on the west side of the river. Reduced to its simplest terms, the will would read as follows: "I give to my son Henry that part of the beach lying west of Long Cove; I give to my daughters Jeane and Gloriana the land on the west side of the Connecticut river north of Yaphank creek, and the residue of landed estate on the south side of the island I give jointly to my sons William Henry and Charles Jeffrey." There could be little room for dispute, if the will was in this form, that the two sons took the whole of the Connecticut river; and, in my opinion, that is the purpose and necessary legal effect of the will as written. A circumstance in favor of this construction of the will is the practical interpretation placed upon it by the family. William Smith, grandson of the patentee, and who derived what title he had to the West Bay from the will of his grandfather, the patentee, disposed of the bay to the town of Brookhaven. Trustees of Brookhaven v. Strong, 60 N. Y. 56. The will of the plaintiff's grandfather, William Smith, made in 1852, assumed to devise the whole river below the going over, which included the premises in question, to his son. The evidence does not disclose that the daughters, or any person claiming under them, except the defendant, have ever made a definite claim of ownership of any portion of the river. These circumstances are not controlling, but are of some weight in arriving at the true interpretation of the will.

The plaintiffs have succeeded to the legal title of the devise to the two sons of the patentee, William Henry Smith and Charles Jeffrey Smith, and, having had possession of the premises in controversy for the statutory period, are entitled to the relief demanded in their complaint, with costs.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, and HIRSCHBERG, JJ.

Walter H. Jaycox and Robert S. Pelletreau, for appellant.
Clarence G. T. Smith, for respondents.

PER CURIAM. Judgment affirmed, with costs, upon the opinion of Mr. Justice WILMOT M. SMITH at Special Term.