[L. A. No. 2389.  Department One.—December 7, 1909.]

# FRANK H. NEWLOVE, Appellant, v. MERCANTILE TRUST COMPANY OF SAN FRANCISCO, Respondent.

WILL—DIRECT DEVISE—POSTPONEMENT OF TIME OF ENJOYMENT—FORFEITURE ON HAPPENING OF CONDITION SUBSEQUENT—TRANSFER OF DEVISE.—Under a will which directly devised to the six sons of the testator all of his real estate, share and share alike, and provided that no portion thereof should be sold until ten years after his death, and that, should any of the sons contract certain enumerated bad habits before such division, his share should be forfeited, or should he die before such division, his share should be divided in a specified manner, each of the sons acquired a vested interest at the time of the testator's death in the undivided share devised to him, subject to divestiture or termination upon the happening of the subsequent act or event specified in the will. Such vested interest could be transferred by the devisee.

ID.—DEVISE PASSES TO ASSIGNEE IN INSOLVENCY.—Under the Insolvency Act of April 16, 1880 (Stats. 1880, p. 82), the interest of such a devisee, upon his being adjudged an insolvent, becomes a part of his estate and liable for his debts, and vested in the assignee by the assignment made to him by the clerk of the court under section 17 of that act.

ID.—SALE OF PROPERTY DEVISED BY ASSIGNEE—WANT OF ACTUAL POSSESSION BY ASSIGNEE.—The assignee in insolvency had power, under subdivision 4 of section 21 of the Insolvency Act, to sell the undivided interest of the devisee in the land, notwithstanding at the time of the sale it was in the actual possession of the executor of the testator for purposes of administration, and had not been taken into actual physical possession either of the insolvent or his assignee.

ID.—QUIETING TITLE—COLLATERAL ATTACK ON SALE IN INSOLVENCY—JURISDICTION.—An action to quiet title to land which had been sold in insolvency proceedings is a collateral attack on such proceedings, and only such matters may be considered as go to the jurisdiction of the court in insolvency.

ID.—AMOUNTS DUE CREDITORS—OMISSION OF DOLLAR MARK IN SCHEDULE OF DEBTS.—Where the petition in voluntary insolvency states that the schedule annexed contains the names of the petitioner's creditors and the sum due to each creditor, and the schedule gives the names of the creditors in a column headed "Names of creditors," and ·opposite each name, in another column headed "Sum due," is placed a sum such as "70.00, 441.54," and so on, aggregating "2551.03," ·the figures so inserted will be deemed to denote sums of money,

CLVI Cal.—42

expressed in units of a dollar, notwithstanding the omission to place a dollar mark as a prefix thereto. So construed, the petition sufficiently shows that the petitioner's debts exceeded three hundred dollars.

ID.—OMISSION TO INCLUDE PROPERTY IN INVENTORY.—Where the original petition and schedules of a voluntary insolvent purport to contain a full, true, and perfect discovery of his estate, and, on their face, comply in all respects with the statutes, the mere failure of the petitioner to include in his inventory certain real property owned by him did not affect the jurisdiction of the court over the insolvency proceedings.

ID.—NOTICE OF MEETING OF CREDITORS—SUFFICIENCY OF PUBLICATION.— The requirement of section 7 of the Insolvency Act, that a copy of the order adjudicating the petitioner an insolvent and appointing a time and place for a meeting of creditors shall immediately be published by the clerk in a designated newspaper as often as such newspaper is printed before the meeting of creditors, and be served forthwith by mail upon all creditors, and that the day named shall not be less than thirty days after the making of the order, is sufficiently complied with, when the adjudication of insolvency was made on a Monday, and designated a newspaper which was only published on Saturdays as the one in which the publication should be made, by a publication in such paper, for a period of thirty-six days, on every Saturday intervening between the date of the order and the time set for the meeting of creditors.

ID.—MAILING NOTICE TO CREDITORS—"FORTHWITH."—The mailing of notice to the creditors four days after the making of the order, but prior to the first publication of the notice in the newspaper, and over thirty days before the time fixed for the creditors' meeting, is a sufficient compliance with the requirement of the statute that such notice shall be mailed "forthwith."

ID.—LAND SUBJECT TO CONTRACT OF PURCHASE BY TESTATOR.—Where a testator at the time of his death was in possession of a tract of land under a contract for the purchase thereof, which was afterwards performed by his executors, and a conveyance thereof executed to them as such in trust for the persons interested in his estate, the land so conveyed becomes a part of his estate, and subject to the terms of his will disposing of his real property.

APPEAL from an order of the Superior Court of Santa Barbara County refusing a new trial. S. E. Crow, Judge.

The facts are stated in the opinion of the court.

B. F. Thomas, and H. C. Booth, for Appellant.

Richards & Carrier, and Heney & Cobb, for Respondent.

ANGELLOTTI, J.—This is an action to quiet title to an undivided interest in certain real property in Santa Barbara County. The defendant had judgment, and plaintiff appeals from an order denying his motion for a new trial.

The real property in question is an undivided one twelfth of what is called the Newlove Ranch. Plaintiff's claim is that he became the owner of this under the terms of the will of his father, John Newlove, who died January 29, 1889. By the fourth paragraph of his will John Newlove gave to his six sons, including plaintiff, all of his real estate share and share alike, the words of the will in this respect being as follows: "I give to my sons, . . . all my real estate, share and share alike." All his property being community property, and his wife, the mother of plaintiff and his brothers, surviving and being entitled to one half, the devise to the six sons was effectual only as to an undivided half of the real property. At the time of his death John Newlove was in possession of said Newlove Ranch under a contract for the purchase thereof dated December 28, 1880, from one Kaiser for ten thousand dollars, two thousand dollars of which was paid at the date of the contract, and the remainder of which, bearing interest, was payable in ten equal annual installments commencing January 1, 1893, with the option to pay the whole purchase price and interest due at any time. Upon full payment being made, a conveyance of the property was to be executed to him. On June 16, 1891, the purchase money having been fully paid, Kaiser executed a conveyance of the property to Joseph H. Newlove and Charles W. Newlove, "as executors of the last will of said John Newlove, deceased . . . in trust for all the persons interested in the estate of said John Newlove, deceased, according to their respective interests therein." The will of John Newlove provided that none of his real estate should be sold until ten years after his decease, and it further provided in the seventh paragraph thereof: "Should any of my sons, or either one of them, contract habits of vice, such as drinking, gambling, etc., before the division of my property, he thereby forfeits his share of the estate, and the same shall be divided among the balance of the heirs, share and share alike. My executor to be the sole judge of the matter. And should any one or more of my sons die before the division of the estate, then his share shall be divided among the remain-

ing heirs share and share alike unless he or they should have sons or daughters in which case it should be set apart for his children as the law provides." Administration of the estate of John Newlove is still pending, and no division of the property has ever been made. Nothing has occurred upon which could be based any claim of forfeiture under the provision of the will already quoted. The undivided one twelfth of the property in controversy here is the undivided one twelfth directly given plaintiff by the devise already referred to.

The defendant claims to be the owner of this undivided one twelfth solely as the successor in interest of plaintiff, by virtue of a sale thereof made on February 24, 1896, by the assignee of his estate in insolvency proceedings had under the act of April, 16, 1880 (Stats. 1880, p. 82), it having acquired whatever interest therein was conveyed to the purchaser at the assignee's sale by the assignee's deed.

1. Assuming the validity of the insolvency proceedings to and including the assignee's deed, which deed purported to convey "all right, title and interest of whatsoever kind and nature, either in law or in equity of the said Frank H. Newlove, insolvent debtor, and of the said W. A. Haslam assignee as aforesaid, in and to" the said Newlove Ranch, it was earnestly contended on the oral argument that the deed was ineffectual for any purpose for the reason that, under the terms of the will, plaintiff had no assignable interest in said land at the time of the assignee's sale; in other words, that he had only such an expectancy as the law denominates "a mere possibility, not coupled with an interest," which, as declared by section 1045 of the Civil Code, cannot be transferred.

It is somewhat difficult to reconcile the position of plaintiff in making this claim with that occupied by him in maintaining this action. He has acquired no additional interest in the Newlove Ranch since the insolvency proceedings and the assignee's deed. Whatever interest therein he has now, he must have had then. He says in his complaint herein that he is the owner in fee simple of an undivided one twelfth thereof, but if his contention that we are discussing be well based he has no vested interest whatever in the property, but simply "a mere possibility, not coupled with an interest," as, for instance, the expectancy of an heir apparent during the life of the ancestor.

However this may be, the claim is not well founded. In our opinion there can be no serious question as to the proper construction of the will of John Newlove in this regard. The devise to his six sons was absolute in terms, direct and not by way of trust. There is nothing in the will purporting to limit the effect of this except such provisions as may be held to withhold actual possession and enjoyment of the property until "division" or "distribution," the provision in regard to forfeiture by any son of "his share," should he contract habits of vice, etc., before the "division" of the property, and the provision for a division among the remaining heirs of the share of any devisee dying without issue before the "division" of the estate. Of course, it is not claimed that a mere postponement of the time of enjoyment or possession of the property devised would prevent the vesting of the property devised in a devisee at the testator's death, and there is nothing in the language used that indicates any intent on the part of the testator that the estate given should not vest at his death. The provision as to forfeiture simply establishes a condition subsequent upon the happening of which the estate given shall be divested. The language is not "if" any of my sons abstain from contracting certain habits for a prescribed time, "then I give," etc., or language of similar import, upon which an argument might reasonably be made that the testator intended the estate given to vest only upon compliance by the devisee with the terms prescribed. He first gave the property absolutely to his sons, and then, in a succeeding paragraph, inserted the forfeiture provision, "Should any of my sons . . . contract habits . . . he thereby forfeits his share," etc. This clearly implies the loss of something already acquired by the person who suffers the penalty. As defined by the Standard Dictionary the term "forfeit" in law means "to lose and surrender to an individual or the state (something that belongs to one) for misconduct, or breach of duty,—lose title to as a penalty." What is it that he is to forfeit, if he does the forbidden thing? The testator expressly says that it is "*his* share of the estate." There can hardly be a clearer example of the condition subsequent defined by section 1349 of the Civil Code, where it is declared: "A condition subsequent is where an estate or interest is so given as to vest immediately, subject only to be divested by some subsequent act or event." The

provision for a division among others of the share of one dying before the division of the estate, commencing "And should any one . . . of my sons die," etc., is an example of the creation of the most common kind of executory devise, one to take effect upon the happening of some contingent event, "in substitution for and in derogation of" a fee previously devised, and which has no effect upon the precedent estate in fee until the contingency happens upon which the executory devise vests and "terminates prematurely the interest which preceded it." (See 2 Underhill Law of Wills, p. 1329.) Construed in the light of the well-established presumption in favor of the vesting of estates, it is very clear to us that plaintiff by reason of the devise in the will, was vested at his father's death with the fee of an undivided one twelfth of all his real estate, subject to divestiture or termination upon the happening of some subsequent act or event. We are satisfied that it must be held, in view of the deed made by Kaiser to the executors of the will of John Newlove subsequent to his death in execution of the agreement of sale, that the Newlove Ranch must be treated as part of the property of deceased at the time of his death. In view of what we have said, it is clear that whatever may be said as to such interest as plaintiff may have in the shares of the other devisees by reason of the provisions for forfeiture and death before division, his interest in the one-twelfth share directly devised to him, the only property in issue here, was a vested interest which could be transferred by him.

2. It is claimed, assuming the insolvency proceedings to have been otherwise regular, that in view of certain language of the Insolvency Act, the assignee had no power to sell any property of the insolvent that had not come into his actual *physical* possession, that the record shows that the assignee had no such possession of plaintiff's undivided interest, and that the attempted sale was therefore void. This claim is based on the language of subdivision 4 of section 21 of the Insolvency Act, the section defining the general powers of the assignee, where it is provided that he shall have power "from time to time to sell at public auction all the estate, real and personal, vested in him as such assignee, which shall come to his possession and as ordered by the court." It cannot be doubted that plaintiff's interest in the Newlove Ranch was, in the contemplation of the Insolvency Act, a part of his estate

and liable for his debts, and that the same, with all other property of every kind and nature, was vested in the assignee by the assignment made to him by the clerk of the court. (Insolvency Act, sec. 17.)   The character of property owned by an insolvent is such in many instances that it is impossible for an assignee to personally have actual physical possession thereof, as is well illustrated in the case of this particular property, an undivided interest in certain real property of deceased, the administration of whose estate is pending in the probate court and whose property is in the actual possession of the executors of the will of deceased for purposes of administration.   Another illustration would be the situation existing where the insolvent owned valuable real property subject only to a life estate in another.   Plaintiff's construction of subdivision 4 of section 21 would render it impossible to subject such property to the satisfaction of the insolvent's debts, even though it be the only property owned by him.   That the legislature intended any such inequitable result is not to be concluded, unless the terms of the statute necessarily require it. We are satisfied that the statute should not be construed as a limitation upon the power to sell, under order of the court, any property of the insolvent, simply because in view of the nature of the estate of the insolvent therein, it cannot be taken into actual physical possession either of the insolvent or his assignee.   Plaintiff's contention in this regard is based upon the refusal of the trial court to allow a question which, as we read it, went simply to the actual physical possession by the assignee of the Newlove Ranch.   There was no claim that the ranch was in the possession of any one claiming adversely to the estate of John Newlove or his devisees, or that plaintiff was entitled to possession thereof or any portion thereof as against the executors.   We are of the opinion that the objection to the question was properly sustained.

The other points made by plaintiff all relate to the validity of the insolvency proceedings.   This being a collateral attack on such proceedings, it is manifest that only such matters may be considered as go to the jurisdiction of the court in insolvency.

3. It is claimed that the court never obtained jurisdiction in those proceedings for the reason that the voluntary petition in insolvency filed by plaintiff did not show that he owed debts

exceeding in amount three hundred dollars, the statute (sec. 2) limiting the operation of that act in cases of voluntary insolvency to persons owing more than that sum. The basis of this claim is the omission to place a dollar mark as a prefix to the figures used in the schedule of debts to designate the amount of debt or "sum due" each creditor named therein. The contention of plaintiff appears unworthy of serious discussion, when considered in the light of the petition and annexed schedules. The petition states that schedule B thereto annexed contains the names etc. of his creditors "and the sum due to each creditor" etc. Schedule B gives the names of the creditors in a column headed "Names of creditors," and opposite each name in another column is given the residence of the creditor, and then in another column, headed "Sum due," is placed the sum as follows: "70.00," "441.54," "830.43," and so on, aggregating "2551.03." Other columns showing nature of indebtedness, cause thereof, etc., follow. In the connection in which they are used these terms necessarily denote sums of money. The dollar is the legal unit of money in the United States, and whenever figures are used to denote a sum of money "such figures must, of course, be understood to represent 'dollars' unless a different intention is clearly expressed." (See *Hunt* v. *Smith*, 9 Kan. 137.) As written here, no person of ordinary understanding could doubt that these amounts meant 70 00-100 dollars, 441 54-100 dollars, etc. In addition to this, schedule C, containing a description of the property of the insolvent and its value, shows very clearly what was meant by such entries as "70.00," "441.54," etc., the dollar mark being used in the column designated "Value" and as a prefix to the first item therein, "150.00," and also being used as a prefix to the items showing total valuation of personal property. Plaintiff relies on certain decisions in which it was held that mere numerical figures in a tax assessment-roll do not express the value of the property as assessed, but as said of these in *Dyke* v. *Bank of Orange,* 90 Cal. 401, [27 Pac. 305]: "While admitting that the strict rule applied to the assessment cases may be too firmly established to be overruled or disregarded by the courts in that class of cases, . . . there is no necessity for extending it to the class to which this case belongs." The distinction between voluntary proceedings in insolvency and proceedings *in invitum* for taxes is too obvious to require comment.

4. It is further claimed that the court failed to acquire jurisdiction of the proceedings by reason of the failure of plaintiff to include in the inventory annexed to his petition, any mention of an interest in the Newlove Ranch. The statute required (sec. 4) that said inventory must contain an accurate description of all the estate, both real and personal, of the petitioner. As appears from the amended schedule subsequently filed by the insolvent, including this property, the omission was due to the fact that he had been advised by his attorney that it should not be included. The original petition and schedules did purport to contain a full, true, and perfect discovery of all his real and personal estate, and, on their face, complied in all respects with the statute. This was all that was essential to give the court jurisdiction to proceed. The requirements as to jurisdiction are stated in *Friedlander* v. *Loucks*, 34 Cal. 24, to be, "first, a petition setting forth substantially such a state of facts as will bring the case within the provisions of the statute and show that the petitioner is entitled to the relief therein provided for; and second, due publication of notice to creditors." (See, also, *Bennett* v. *His Creditors*, 22 Cal. 42.) Under elementary rules, the jurisdiction depends upon the sufficiency of the averments, and not upon the truth of those averments. *LaPoint* v. *Boulware*, 104 Cal. 264, [37 Pac. 927], cited by plaintiff, is not at all in point. There the *petition* filed by creditors failed to state facts which would sustain an adjudication that the debtor was an insolvent. It was held in *Rued* v. *Cooper*, 109 Cal. 682, [34 Pac. 98], that property not included in the insolvent's schedule, or known to the assignee until after his discharge, passed to the assignee by virtue of his assignment. (See, also, *Poehlmann* v. *Kennedy*, 48 Cal. 201.) Of course, this could not be, if the mere failure to include the property in the inventory could affect the jurisdiction. As said in *Friedlander* v. *Loucks*, 34 Cal. 24, "the questions made here relate to movements within the jurisdiction rather than to the jurisdiction itself."

5. It is claimed that the order adjudicating plaintiff an insolvent and appointing a time and place for the meeting of creditors was not published for the full time required by law, or mailed to the creditors as required by law, the statute providing (sec. 7) that a copy of said order shall immediately be published by the clerk of the court in the newspaper desig--

nated therein as often as the newspaper is printed before the meeting of creditors, and be served by the clerk forthwith by mail upon all creditors. The day named shall not be less than thirty days after the making of said order (sec. 6). The petition was filed February 4, 1895, and the adjudication of insolvency made on the same day, the order specifying March 16, 1895, at 10 A. M. as the time for the meeting of creditors and designating the Santa Maria *Times,* a weekly newspaper, as the paper in which the same should be published. The affidavit of publication stated that the order was published in said newspaper "for thirty-six days successively next before March 16th, 1895, and as often during said period of thirty-six days as the said paper was published, to wit, on every Saturday." The point in regard to the publication is that as there were forty days between February 4 and March 16, it was not made to appear that the order was published in every issue of the paper between the making of the order and the time fixed thereby for the meeting of creditors. But it was so made to appear. The affidavit fairly showed that the paper was published only on Saturday of each week, and an examination of the calendar for the year 1895 shows that February 4 of that year, the day on which the adjudication was made, was a Monday. The thirty-six days described in the affidavit of publication thus included every publication day of the Santa Maria *Times* between the adjudication and the time fixed thereby for the meeting of creditors. The publication was, therefore, in full accord with the statute.

The affidavit of the clerk as to the service by mail of the notice on creditors shows that he did not mail the notice until February 8, the fourth day after the making of the order, but prior to the first publication of the notice in the newspaper, and over thirty days before the time fixed for the creditors' meeting. Under the circumstances, this was a sufficient compliance with the statute. The term "forthwith" like the term "immediately," "is not in law to be necessarily construed as a time immediately succeeding without an interval." (See *Anderson* v. *Goff,* 72 Cal. 73, [1 Am. St. Rep. 34, 13 Pac. 73].) "In every case the meaning depends upon the circumstances of the case and the act to be performed." (*Lewis* v. *Curry,* 156 Cal. 93, [103 Pac. 496].) We think that under the wording of this statute a mailing that is as

early as the first possible publication in the newspaper designated by the court should be held to measure up to the requirement in this regard.

6. As we have before said, the effect of the conveyance of the Newlove Ranch by Kaiser to the executors of the will of John Newlove was to vest a legal title to the property in the same manner as if the deed had been executed prior to the death of John Newlove. The property was thenceforth, if not before, a part of his estate, and plaintiff had a legal title to an undivided one twelfth, subject to the possession of the executors for purposes of administration.

There is no other matter meriting discussion.

The order denying a new trial is affirmed.

Shaw, J., and Sloss, J., concurred.