it is said in *State* v. *Ryan,* 34 Wash. 597 [76 Pac. 90], that:

"But appellant claims that it should have alleged that the $20 was money and of some value. We think it would be difficult to define the meaning of the words 'twenty dollars' *if they do not mean that sum of money.* Everybody in this country knows that the word 'dollar' means a certain amount of money. . . . "

It has been uniformly held that the use of the word "dollar," when applied to United States circulating medium, means a fixed and definite value of one hundred cents. (*McDonald* v. *State,* 2 Ga. App. 633 [58 S. E. 1067, 1068]; *Maxwell* v. *State,* 9 Ga. App. 875 [72 S. E. 445]; *People* v. *Dillon,* 1 Cal. App. (2d) 224, 228 [36 Pac. (2d) 416]; *People* v. *Hill,* 2 Cal. App. (2d) 141, 148 [37 Pac. (2d) 849]; 13 Words and Phrases, Perm. Ed., p. 240.) In the case of *Newlove* v. *Mercantile Trust Co. of S. F.,* 156 Cal. 657 [105 Pac. 971] at page 664, the court says:

"The dollar is the legal unit of money in the United States, and whenever figures are used to denote a sum of money 'such figures must, of course, be understood to represent "dollars" unless a different intention is clearly expressed.'"

We conclude that the proof in the present case that the defendants procured by means of fraud from George Palamidesi the sum of "three hundred dollars in money," establishes the fact that the money was circulating medium of the United States of that specified value, and that the offense therefore amounted to grand theft.

Grand theft is accomplished by fraudulently procuring a sum of money in excess of two hundred dollars from the owner by means of artifice, trickery or misrepresentations even though it is obtained as a pretended loan if it appears to be the intention of the accused person at the time of the transaction not to repay the money. (*People* v. *Weibert,* 18 Cal. App. (2d) 457, 464.[64 Pac. (2d) 169]; *In re Clark,* 34 Cal. App. 440 [167 Pac. 1143]; 15 Cal. Jur. 905, secs. 11 and 12; 32 Am. Jur. 922, sec. 32.) The question of the intent with which the money is procured is a matter for the determination of the jury. (*People* v. *Edwards,* 72 Cal. App. 102, 117 [236 Pac. 944].) In the present case there is no doubt the defendants had the intention to permanently deprive the owner of his money, and to never repay it, at the

time when they fraudulently procured it by false representations as a pretended temporary loan.

 The fact that George Palamidesi subsequently recovered judgment against the defendants in a civil action, and satisfied the judgment by an execution sale of their automobile, does not relieve them from prosecution and conviction of grand theft for feloniously procuring a pretended loan of the money by means of false representations. Not even a voluntary repayment of the money after the crime was committed would relieve them from criminal liability. (36 C. J. 915, sec. 504; 32 Am. Jur. 1029, sec. 117.)

 The appellants contend that the judgment should be reversed for failure to affirmatively prove that Palamidesi relied on the alleged false representations in loaning his money to them. The false representations which induced the proprietor of the Hideaway Café to part with his money consist of Alba's promise that if he would loan defendants three hundred dollars "for a couple of hours," they would raise the balance of the purchase price of the gold and repay him and redeem their sack of gold, and also that the sack contained genuine gold and not mere particles of brass. Clearly the defendants then intended to thereby permanently defraud him of his money. He could not have possibly known they did not intend to repay him. He repeatedly testified positively that he relied upon them and their false statements that the sack contained twenty-four hundred dollars' worth of genuine gold. He had no special knowledge of the character of the metal in the sack. He did not even examine it. He merely saw them at a distance pour some of the particles on a sheet of paper and heard them discussing it as genuine gold. They repeatedly called it gold. Regarding his reliance upon their false statements he testified:

"Joe Alba told me . . . we will go down town and in a couple of hours we will bring you the money and we will leave the gold for security. . . . Q. Did you believe that that was gold in the canvas bag? A. Sure I believed it. . . . He told me it was gold. . . . Q. Then you loaned him the three hundred dollars because you thought it was gold, didn't you? A. Yes. . . . Q. You decided it was gold, didn't you? A. That is what they told me. Q. You decided what they told you was all right? A. I believed them, sure. . . . Q. You did not try to find out whether it was gold or not?

A. No. I just figured on trusting them. . . . Q. And you relied on his statement that it was gold? A. Yes.''

█ It is true that the crime of theft, accomplished by means of false representations, under section 484 of the Penal Code, may not be consummated when the owner of the money or property knows the statements are false, or even when he parts with his money or property without relying on the false representations. The very gist of that offense is that the property is procured by means of the false representations except for which the owner would not part with his possession of it. (12 Cal. Jur. 750, sec. 29.) However, in civil suits, in the absence of evidence to the contrary, proof of false representations which are calculated to deceive one and which are made with the intent to defraud one of his property, raises the presumption they did actually induce him to do so. Under such circumstances it is necessary for the defendant to prove as an affirmative defense that the injured party did not rely on the false representations. (*Pohl* v. *Mills,* 218 Cal. 641, 652 [24 Pac. (2d) 476] ; *Troy Laundry Machinery Co., Ltd.,* v. *Drivers' Independent Laundry Co.,* 14 Cal. App. 152, 155 [111 Pac. 121].) In the Pohl case, *supra,* quoting with approval from the case of *De Garmo* v. *Petitfils Confiserie,* 93 Cal. App. 261, 270 [269 Pac. 692], it is said in that regard:

'' . . . the representations made to appellant were ones calculated to induce him to buy the stock and he did, in fact, make the purchase; therefore, the presumption is that the representations induced him to do so, and in order to take away his right to relief on the ground of fraud, it must be shown that he *did not rely upon said representations.*''

█ In the present criminal case, notwithstanding the fact that false representations were made which were calculated to induce the owner to part with his property, it is not necessary to determine that the burden shifted to the defendants to show that he did not rely on those fraudulent representations. There is an abundance of evidence to prove affirmatively that he did rely on those false representations in entrusting his three hundred dollars to the defendants.

█ We find no error in the challenged instructions which were given to the jury or refused. The refused instructions were fully covered by others which were given to the jury in the charge of the court. All of the necessary elements con-

stituting theft accomplished by means of fraudulent representations were fully stated in the court's charge to the jury. We are of the opinion the jury was very fully and fairly instructed regarding the necessary elements of the crime with which the defendants were charged. The jurors were told that the misrepresentations which were made must have been known to the defendants to be false; that they were made with the intention of fraudulently inducing the owner to part with his money; that he relied upon the statements as true, and that he was thereby induced to and did part with his money on that account. At the request of the prosecution, the following instruction was properly given to the jury in that regard:

"Theft by trick and device may be accomplished by obtaining the property both by words and acts on the part of the accused, which are known by him to be false and fraudulent and which are made by him *with the intention of inducing the owner of the property to be deceived, and* [when the owner] *relying on such deception thereby consents to the transfer of the possession of his property to the accused.*"

We are of the opinion the reference of the district attorney to the defendants as "rats," in the course of his argument to the jury, does not constitute reversible error. We do not justify the use of such epithets in the argument of a prosecuting officer, directed toward an accused person in the course of his trial. It is evidence of indiscretion and an excess of zeal. No doubt the jurors recognized it as such. We assume that the language was used because the appellants' brief so states. But the argument of the district attorney does not appear in the transcript. However, the appellants concede that an objection to that language was sustained, and we assume the court properly instructed the jury to disregard it. It is stated by the appellants that the court reprimanded the prosecuting officer for using the language. Assuming that it constituted misconduct, it is not reversible error for the reason that there was not a miscarriage of justice in the conviction of the defendants. The crime of which they were convicted is most reprehensible, and there appears to be no doubt of their guilt. None of the defendants took the witness stand in his own behalf.

The judgment and order are affirmed.

Tuttle, J., and Pullen P. J., concurred.