(No. 32821.▮

THE FARMERS STATE BANK AND TRUST COMPANY, Exr., Appellant, *vs.* GERTRUDE R. MANGOLD *et al.,* Appellees.

*Opinion filed September 24, 1953.*

EDWARD W. CLEARY, and RICHARD J. FALETTI, both of Urbana, and WILSON & WRIGHT, of Jacksonville, for appellant.

ALBERT W. HALL, of Jacksonville, for appellee Lelia B. Milstead Petefish.

Mr. CHIEF JUSTICE SCHAEFER delivered the opinion of the court:

The question in this case is the effect to be given to the will of J. W. Liter, which disposed of his property in these words: "That after my demise that I do now desire that all my property Both real and personal to revert to my wife Annie Elizabeth all her natural life—Then to go to the two girls now in our home—Lelia B. Milstead and Marie Pauline Dawson Providing the— do that which is right—otherwise to be distributed as my wife Lizzie may see fit or direct—"

The issue arises in an action to construe his will and to quiet title to land which passed under it. The action was instituted in the circuit court of Morgan County by The Farmers State Bank and Trust Company, executor of the will of Anna Elizabeth Liter, the widow of J. W. Liter. The court sustained a motion to dismiss the complaint on the ground that neither the widow nor the plaintiff had any interest in the land, and the plaintiff has appealed.

From the complaint it appears that the will was executed on March 30, 1911, and Liter died the same day. His widow remained in possession of the land in question until her death on September 15, 1950. By her will she directed the plaintiff, as executor, to sell the real estate "devised" to her or which she "received" under her husband's will and from the net proceeds to pay $500 each to two named churches, and to pay one half of the balance to Pauline Dawson, one-fourth to the heirs-at-law of J. W. Liter, and the remaining one-fourth to the heirs-at-law of the testatrix.

Plaintiff also alleged that after the death of Anna Elizabeth Liter it found among her papers an affidavit or statement dated September 21, 1911, and sworn to by three persons which stated that in the month of February, 1911, each of them conversed with John W. Liter about his financial and personal affairs, and that in the course of

these conversations he made the statement that Lelia B. Milstead, his foster child, had in certain things conducted herself contrary to his wishes, and that he had informed her that if she continued so to do and that if she married one Claude Petefish, she should receive nothing from his estate or any property which he might leave except that which he had already given her. Upon information and belief plaintiff further alleged that Mrs. Liter, knowing the purpose of the proviso in her husband's will and also knowing that Lelia B. Milstead, contrary to the wishes and directions of J. W. Liter, married Claude Petefish on May 22, 1911, made her will with the purpose of exercising the power given her by her husband's will, to dispose of the real estate she received under that will.

The motion to dismiss which was filed on behalf of the principal defendant, Lelia B. Milstead Petefish, was based upon the grounds that it appears from the face of the complaint that under the will of J. W. Liter, the defendant Mrs. Petefish, who was formerly Lelia B. Milstead, and the defendant Marie Pauline Dawson Elliott, who was formerly Marie Pauline Dawson, are the owners of the real estate described in the complaint in fee simple as tenants in common; that the proviso in the will of J. W. Liter is void for uncertainty, and that his wife was therefore without power to dispose of the real estate or of any interest therein.

By agreement the cause was submitted upon the following questions: (1) whether the proviso of the will of J. W. Liter is void for uncertainty; (2) whether parol evidence is admissible to explain the purpose of the proviso, and (3) whether the will contained an unqualified power of appointment exercisable by Anna Elizabeth Liter. The trial court held that the proviso is a condition subsequent, incapable of definite ascertainment and so void for uncertainty; that Mrs. Liter had no authority or power

to dispose of the real estate or any interest therein by her will; that neither she nor her executor or her legal representatives had any right, title or interest in the property, and that Lelia B. Milstead Petefish and Marie Pauline Dawson Elliott are the owners of the real estate in fee simple as tenants in common.

The plaintiff's position is that Liter's will created a life estate in his wife with remainders in Lelia B. Milstead and Marie Pauline Dawson, which remainders are subject to the condition expressed in the will ("—Providing they do that which is right—"), with an alternative disposition by way of power of appointment conferred upon the wife ("—otherwise to be distributed as my wife Lizzie may see fit or direct—") in the event of nonperformance of the condition. The defendants support the construction adopted by the trial court.

Plaintiff argues that the construction which it advances is the only construction which gives effect to all of the clauses of the will, that it is consistent with the intent of the testator in the light of the circumstances which existed at the time the will was drafted and that Liter's widow acted upon this interpretation of the will, thereby effecting a practical construction which is entitled to judicial consideration.

It is true that the construction advanced by the plaintiff gives an effect to all of the provisions of the will which is not given by the construction advocated by the defendants and adopted by the trial court. And it is true, also, as the plaintiff points out, that the "legally more effective" construction is, as a general proposition, to be favored. (*Papa* v. *Papa*, 377 Ill. 316, 319; cf. Am. Law Inst., Restatement of the Law of Property, sec. 323(c) and Comment m.) But of course it is not true that a construction which gives an effect to all of the clauses of a will is, for that reason alone, to be adopted. The proffered interpretation must gibe with the intent of the testator. The question remains,

therefore, whether this "legally more effective" construction squares with what the testator said in his will.

By way of answer to this question, plaintiff points to the affidavit with respect to the testator's disapproval of the then anticipated marriage of Lelia B. Milstead with Claude Peterfish, and suggests that the widow of the testator acted in accordance with his views as there described. There are difficulties in the way of this interpretation of the intent of the testator. Viewed in the light of prevailing theories as to the admissibility of evidence extrinsic to the will itself, the allegations of the complaint would be proper only to the extent that they afforded a standard of interpretation, or glossary, of the words used by the testator. (Wigmore on Evidence, sec. 2470; Kales, Estates, Future Interests, sec. 128.) So regarded, the allegations might tend to suggest that to the testator the expression "do that which is right" meant "do not marry Claude Petefish." To that extent, it might be argued, the testator's understanding of the very general concept "that which is right" is reduced to certainty. But obviously the phrase must have a broader meaning, for it was to apply not only to the Milstead girl, whose marriage with Petefish was disapproved by the testator, but also to the Dawson girl, as to whom no particularization is suggested. If we were to venture further, into terrain normally not considered open for judicial exploration, and consider the evidence not only as indicating the standard of interpretation with respect to which the testator used the words he did, but also as a direct expression of his intention, the same difficulty of incompleteness of expression would confront us.

To avoid the difficulties which flow from the generality of the expression "do that which is right" and from the fact that the will names no one whose standard of "rightness" is to control, the plaintiff advances this proposition: "Liter could have conferred upon his wife an unlimited power to divest the remainders given to the two girls without refer-

ence to *any* condition; a fortiori, he can confer on his wife the power of divesting the remainders (or of affirming them) only upon the occurrence of a condition to be determined in her uncontrolled discretion." But the question is not whether the testator could have given his wife a completely discretionary power of appointment, but whether he did so. A short answer is that no such discretionary power is expressed in the will. Beyond that, since the purpose of a condition of this type is to influence the conduct of the donee, (American Law Inst. Restatement of the Law of Property, sec. 435,) it follows that the substitution of an unexpressed personal and subjective yardstick for an expressed objective one would distort the testator's intent and make it difficult, if not impossible, for the donee to know the standard of conduct to which he is to conform.

As a matter of law, the plaintiff's contention that the practical construction of the testator's will made by his widow is an element which may be considered finds some support in the authorities. (*Smith* v. *Creech,* 186 N.C. 187, 119 S.E. 3; *Smith* v. *Bartlett,* 79 App. Div. 174, 81 N.Y. Supp. 231 (reversed on other grounds, 180 N.Y. 360) ; *In re Estate of Kelly,* 177 Minn. 311, 225 N.W. 156.) But we do not find any support for the plaintiff's theory in what Mrs. Liter actually did. There is no suggestion in the complaint that Marie Pauline Dawson Elliott ever failed to "do that which is right," whatever interpretation be given to those words. Her undivided half interest in the land would therefore come to her directly under the will of the testator, free of any power of interference on the part of the testator's widow. The testator's widow, however, by her will devised to Mrs. Elliott something less than a half interest in the proceeds of the sale of the land. Her conduct in so doing can only be reconciled with her authority under the will of the testator by assuming, first, that acting under the testator's will she determined that Mrs. Elliott's conduct had been such that the interest given her by the

testator should be forfeited, and, second, that acting for herself she decided that regardless of Mrs. Elliott's failure to comply with the standard of conduct laid down by the testator, she should, nevertheless, receive from the testator's widow substantially the same interest for which she had failed to qualify under the testator's will. The inferences are too tenuous to be persuasive.

The *dictum* in *Cassem* v. *Kennedy,* 147 Ill. 660, 663, "Had the conditions stopped with the words 'till he settles down in life,' it might have been said the event was not capable of definite ascertainment" does not aid us in the decision of this case. Counsel for the plaintiff have also brought to our attention numerous decisions of other jurisdictions in which conditions for the vesting or divesting of estates have been sustained, although expressed in more or less general terms. Among them are: "provided he continue a steady boy," *Pew* v. *Lefferty,* 16 Grant CH. Rep. 408; "continue to conduct herself as she has heretofore done," *Reuff* v. *Coleman,* 30 W. Va. 171, 3 S.E. 597; "if he refrains from vicious habits and conducts himself with sobriety," *Dustan* v. *Dustan,* 1 Paige 509; "Should he continue in the same course of life which he has followed for many years in keeping low company and frequenting the public houses," *Tattersall* v. *Howell,* 2 Meriv. 26, 35 Eng. Rep. 850; "abtain totally from intoxicating liquors and card playing and be kind to mother, and be known among friends as an industrious man," *Jordan* v. *Dunn,* 13 Ont. Rep. 267, aff'd 15 Ont. App. Rep. 744; "so long as her conduct and behavior should be discreet," *Wynne* v. *Wynne,* 2 M. & G. 8, 133 Eng. Rep. 642; "be known as a sober, steady and industrious man," *Re Fox,* 8 Ont. Rep. 489, "Providing they are not lazy and spendthrifts, drunkards, worthless characters, or guilty of any act of immorality," *Woodhill* v. *Thomas,* 18 Ont. Rep. 277; "but if he does not make proper use of his money," *Pedrick* v. *Pedrick,* 50 N.J.Eq.

479, 26 Atl. 267; "learn some useful trade, business or profession, and is of good moral character," *Webster* v. *Morris,* 66 Wis. 366, 28 N.W. 353; "be deemed a reformed man in judgment of the Executors," *Markham* v. *Hufford,* 123 Mich. 505, 82 N.W. 222, 48 L.R.A. 580; "reformed of his intemperate   *   *   *   habits and shall then be living  *  *  *  a virtuous, industrious, temperate  *  *  *  life," *Hawke* v. *Euyart,* 30 Neb. 149, 46 N.W. 422; "have reformed, and become a sober and respectable citizen of good moral character," *Burnham* v. *Burnham,* 79 Wis. 557, 48 N.W. 661; "good habits," *Campbell* v. *Clough,* 71 N.H. 181, 51 Atl. 668; "five years of continued sobriety and good behavior," *Colket* v. *St. Louis Union Trust Co.* 52 Fed. 2d 390, *cert. den. sub nom. Kerens* v. *Colket,* 285 U.S. 543; *Kerens* v. *St. Louis Union Trust Co.* 283 Mo. 601, 223 S.W. 645, 11 A.L.R. 288; "contract habits of vice, such as drinking, gambling, etc.," *Newlove* v. *Mercantile Trust Co.* 156 Cal. 657, 105 Pac. 971; and "led a sober and industrious life  *  *  * to the reasonable satisfaction of  *  *  *  trustee," *Watters* v. *First National Bank,* 233 Ala. 227, 171 So. 280.

We have examined these cases. In none of them, in our opinion, is the critical condition expressed in terms so highly abstract as the one with which we are concerned. In many of them, no issue as to the generality of the condition was raised, and in others a specific person was designated as arbiter to determine compliance or not. Here, not only is the condition expressed in terms of the utmost generality; the arbiter is unmentioned and can be ascertained only by inference.

In our opinion the condition upon which the testator's widow was given the power to affect the Milstead and Dawson remainders was expressed in terms so generalized and vague as to be devoid of effective meaning. If a testator is to project his control beyond his death by directing

the disposition of his property in the event of future contingencies, he must do so in terms more specific than those in the will before us.

Since the condition upon which is based the power of the testator's widow to affect the interests of Lelia B. Milstead Petefish and Marie Pauline Dawson Elliott must fail because of its lack of certainty, it follows that the decree of the chancellor was correct and should be affirmed.

*Decree affirmed.*