Joint School District No. 1, Town of Greenfield, Respondent, vs. Bosch and others, Appellants.

*September 11—October 8, 1935.*

182

For the appellants there was a brief by *A. A. Cooper* and *W. H. Churchill,* both of Milwaukee, and oral argument by *Mr. Cooper.*

*Harold H. Paul* of Milwaukee, for the respondent.

MARTIN, J.   We do not deem it necessary to discuss the evidentiary facts.  The findings are sustained by a preponderance of the testimony.   There is little, if any, conflict in the evidence as to the original dedication of the premises in question for school district purposes, and it is conceded that the

premises have been continuously used for school purposes since erection of the first schoolhouse thereon in the year 1851.

In the deed from Enoch Chase, the original patentee, of the entire quarter section, which includes the school site, to Ebenezer Hale on June 29, 1829, there is no reference to any occupancy by the school district, but in the conveyance of July 30, 1855, from Ebenezer Hale to Orson B. Morse of the entire quarter section, there is the following reservation: "and subject to a lease of about one-half acre to School District No. 1, Town of Greenfield," and in all subsequent conveyances there is reservation as to the lease to the school district.

However, as stated in the decision of the trial court:

"Regardless of references in ancient deeds to the existence of a 'lease' so-called to the plaintiff school district, the school grounds in question were many years ago dedicated to the plaintiff district for school purposes. It is considered that said references were merely made by scriveners unfamiliar with the true nature and legal effect of the transaction in controversy. There was an intent to dedicate and an acceptance of the dedication in the fullest sense, followed by the erection of the original, and a later, school building, both having been devoted to school purposes for a long period of time greatly in excess of twenty years. Relying upon such dedication, the school district invested large sums of money raised by taxation. These were invested in the buildings and maintenance of the same and of a school therein.

"The evidence of such long continued use very convincingly, if not conclusively, establishes the dedication claimed."

Citing *Lemon v. Hayden,* 13 Wis. *159, *165; *State v. Lloyd,* 133 Wis. 468, 472, 473, 113 N. W. 964; *Town of Randall v. Rovelstad,* 105 Wis. 410, 420, 81 N. W. 819; *Knox v. Roehl,* 153 Wis. 239, 243, 140 N. W. 1121; *Whitehead & Matheson Co. v. Jensen,* 203 Wis. 12, 16, 233 N. W. 546.

In 8 R. C. L., under the title "Dedication," p. 906, § 31, it is said:

"A common-law dedication does not operate as a grant, but by way of estoppel *in pais*. This doctrine is adopted from necessity, for lack of a grantee capable of taking. The dedication, therefore, is regarded not as transferring a right, but as operating to preclude the owner from resuming his right of private property, or indeed any use inconsistent with the public use. The ground of the estoppel is that to reclaim the land would be a violation of good faith to the public and to those who have acquired private property with a view to the enjoyment of the use contemplated by the dedication. . . ."

In 18 C. J., under the title "Dedication," p. 41, § 6, it is stated:

"A distinguishing difference between a statutory and a common-law dedication, it has been said, is that the former operates by way of a grant and the latter by way of an estoppel *in pais*." And on p. 42, § 12, it is said:
"An incomplete or defective statutory dedication will, when accepted by the public or when rights are acquired under it by third persons, operate as a common-law dedication."

In *Thorndike v. Milwaukee Auditorium Co.* 143 Wis. 1, 14, 15, 126 N. W. 881, it is held: "That a defective statutory dedication, if accepted by the public, will be good as a common-law dedication."

In the instant case the dedication was for a public purpose of state-wide interest.

In *State ex rel. Zilisch v. Auer,* 197 Wis. 284, 293, 221 N. W. 860, 223 N. W. 123, the court said:

" 'The school districts of the state are governmental agencies established by legislative authority to perform the public duty of educating the children of the state. The powers given them are granted solely for the purpose of enabling them to perform this public duty.' "

In *State ex rel. Harbach v. Mayor,* 189 Wis. 84, 89, 206 N. W. 210, it is said:

"One article of the constitution is devoted to municipal affairs and the organization of cities and villages. Another article of the constitution is devoted to education and provides for the establishment of district schools. With reference to the interest of the state in the two fields there is a wide difference. Local municipalities are organized for the purpose of dealing with matters of local concern. In such matters the state has little or no interest. The state, however, does have an interest in the education of its entire citizenship, an interest so deep and substantial that the framers of the constitution not only made provision for the establishment of district schools, but made provision for the creation of a school fund the income of which should be devoted to the maintenance of district schools throughout the state."

The trial court found as a fact and as a conclusion of law that the defendants are estopped from denying the existence of the dedication of the premises in question for school purposes, and we approve same.

The remaining question is as to the damages sustained by the respective parties resulting from the taking of the property by condemnation proceedings under date of July 3, 1934. Separate values are fixed. That is, the value of the school building located upon the premises in question as of July 3, 1934, was found to be $11,500; the value of the real estate, exclusive of the building, as of July 3, 1934, was found to be $1,500. The appellants contend that the plaintiff's only interest in the award is the sale or removal value of the building, and that plaintiff acquired a license only to occupy the land for school purposes, and that when the use for which the land was dedicated ceased, plaintiff's rights therein ceased.

We must keep in mind that the school district did not abandon the school property and premises, and the trial court has found that there was no intention by the school district to

give up or abandon its right to use the premises under the dedication, so that at the time of the condemnation the school district had the right to occupy the premises exclusively for school purposes indefinitely. So we really come to the question, What, if any, value did the defendants' contingent reversion have? The trial court found that the value of the defendants' contingent reversion was nominal, but did allow defendants the sum of $50 therefor. The court, therefore, found the value of plaintiff's interest, including the value of the building and the value of the grant or dedication for school purposes, to be $12,950.

In 20 C. J. p. 759, § 218, it is said:

Taking property previously devoted to public use or subject to easement—(1) In general. Where it is shown that the fee of a highway taken by condemnation has a substantial value, the owner of the fee is entitled to recover more than a mere nominal sum. Nominal awards, at least, should be made to the owners of private interests in parts of the streets condemned." And at page 726, § 186, it is said: "Where by virtue of the power of eminent domain the right is acquired to occupy and use the surface of the land perpetually for a given purpose, the bare fee left in the owner is for all practical purposes valueless, and it is not error to assess the damages as if a fee were taken.".

In 4 Sutherland, Damages (4th ed.), p. 4085, § 1081, the author says:

"Just compensation is not limited to and assessable only in favor of the owner in fee. A life interest or a term of years may be carved out of the fee. In such case the tenant for life or lessee, as well as the remainderman or lessor, is equally entitled to compensation for injury to his interest. Every person having any interest, partial or temporary, or permanent and absolute, is entitled to damages proportioned to the injury to that interest. *If the reversionary interest in the lands sought to be condemned is so remote that its value is merely nominal or speculative it is not required that even nominal damages be awarded,* at least where the proceeding

was instituted by the party who sought to obtain it and that party is charged with the costs in any event. In fixing the damages due a tenant the injury done the easement is only to be regarded."

At page 4089 this author says: "The damages to a life estate may be measured by the net annual value of the premises multiplied by the tenant's expectancy of life and reduced to its present cash value. The division of ownership, however, cannot operate to subject the condemning party to the payment of greater damages than if one person had a complete and perfect title."

Again, at page 4096, § 1082, the author says: "If land sought to be condemned for an easement is already burdened with one public servitude or private easement in a third party the imposition of another servitude of the same kind gives no right to substantial damages. . . ."

In 10 R. C. L. p. 133, § 117, it is said:

"While it is no doubt true that ordinarily a city or town or a railroad company in acquiring land for a highway or railroad is only entitled to acquire by condemnation proceedings an easement over the land, and that the fee thereof remains in the owner, yet in most condemnation cases for highways or railroads, this distinction, as far as it enters into a determination of the damages to be assessed for the right of way acquired thereby, has no practical application. Usually in such cases there is no substantial difference in value between the easement and the fee, of which the law will take notice. Hence, in ordinary cases, where condemnation for a right of way is sought, evidence is permitted to show, as the damages sustained, the full value of the land taken, upon the theory that the easement will be perpetual; that the right of way acquired, though technically an easement, will be permanent in its nature, and the possibility of abandonment by nonuser so remote and improbable as not to be taken into consideration; that the exercise of the right will require practically the exclusive use of the surface; and *that any interest which might be reserved to the owner in the fee would only be a nominal one and of no value."*

In the instant case the respondent school district had the perpetual, exclusive right to use the property and premises

in question for school purposes. When it was deprived of that right by the exercise of the right of eminent domain by Milwaukee county, it seems clear to us that the value of such right in the school district under the evidence was equal to or in excess of the sum of $1,500, which was found to be the value of the real estate exclusive of the school building as of the date of the award of damages. The findings and conclusion of the trial court in this respect are sustained by the authorities above quoted.

In *Boston Chamber of Commerce v. City of Boston,* 195 Mass. 338, 81 N. E. 244, the supreme court of Massachusetts said:

"The value of the land is of no consequence, except as an aid in determining the value of the easement taken for the public, or the diminution in the value of the land by reason of the taking of the easement. If, before the taking, the land is subject to an easement nearly or quite as permanent in its nature as the easement taken for the public, and substantially the same in its effect upon the land in reference to other users of it, *very little, if any, value is taken from it by the taking of the public easement.*"

In *Chicago W. D. Ry. Co. v. Metropolitan W. S. El. R. Co.* 152 Ill. 519, 38 N. E. 736, 738, in which the land sought to be condemned was under lease for a term of nine hundred and ninety-nine years, the supreme court of Illinois said:

"Under the terms of the lease, all property, all rights and franchises are absolutely transferred to the lessee for a period of 999 years. Nothing whatever is left in the lessor but the right to exist as a corporate body for the purpose of securing the rents provided for in the lease. Under the facts as they existed, was the lessor corporation such an owner as entitled it to compensation [in the condemnation proceedings] ? In other words, Was the title so held to the property of any value whatever? After the execution of the lease, it is difficult to see what title or estate remained in the lessor which was of such 'value as to form a basis for awarding compensation,' but if the question was one of doubt, in the absence

of evidence bearing directly on the question, that doubt was removed by the evidence, introduced in the trial before the jury. One witness, and but one, was called to testify as to the value of the estate of the lessor in the premises,— Edgar M. Snow,—and he testified that the lessor's reversionary interest in the premises was merely nominal and speculative; and on cross-examination he further testified that the interest was not worth anything, and had no market value. No other witness was called to testify as to the value of the lessor's reversionary interest in the premises, and under the evidence, as it was presented to the jury on this question, there was nothing before the jury upon which they could, without disregarding their oaths, award compensation to the lessor.

". . . As a general rule, where a party to a proceeding has an interest in the premises, but is really entitled to no compensation, the practice has been to award nominal· damages; but we do not think that is required. The only object in awarding nominal damages in any case is for the purpose of carrying costs, but in this class of cases the petitioner always pays the costs; hence no necessity exists for allowing nominal damages."

To the same effect, see *Matter of City of Brooklyn,* 73 N. Y. 179, 184; *In re Adams,* 141 N. Y. 297, 301, 36 N. E. 318; *People ex rel. Washburn v. Common Council,* 128 App. Div. 44, 49, 112 N. Y. Supp. 387; *City of Buffalo v. Pratt,* 131 N. Y. 293, 30 N. E. 233; *Clayton v. Gilmer County Court,* 58 W. Va. 253, 52 S. E. 103, 2 L. R. A. (N. S.) 598; *Ross v. Thompson,* 78 Ind. 90.

*By the Court.*—Judgment affirmed.