Merrimack,
Dec. 6, 1938.

STATE *v.* FEDERAL SQUARE CORPORATION.

*William P. Fowler* (by brief and orally), for himself and other claimants.

*Dudley W. Orr* (by brief and orally), for Concord.

*Per Curiam.* The fundamental proposition upon which the claimants base their whole argument is stated in their brief as follows: "The deed of October 18, 1888, established a charitable trust for the benefit of the inhabitants of the City of Concord, with a resulting trust upon its termination in favor of the grantors and their representatives." The claimants concede that unless some such trust relationship is found to exist "they would admittedly be entitled to receive no damages."

That the deed established a public charity may not be doubted. Cities and towns may hold property in trust for public purposes "not foreign to their institution or incompatible with the objects of their organization" (P. L., c. 42, s. 18; *Keene* v. *District, ante,* 477) and the maintenance of public libraries is a proper purpose (*Ib.*). When created by a donor or testator, the trust is enforceable as a charity and governed by the law of charitable trusts, the fact that the trustee is a municipality having no distinguishing effect. This is the view accepted in our cases. *Sargent* v. *Cornish,* 54 N. H. 18; *Ashuelot Nat'l Bank* v. *Keene,* 74 N. H. 148; *Keene* v. *Eastman,* 75 N. H. 191; *Fernald* v. *First Church, &c.,* 77 N. H. 108, 110; *Tuttle's Petition,* 80 N. H. 36; *Drury* v. *Sleeper,* 84 N. H. 98; *Keene* v. *District, supra.*

Whether a real trust exists with reference to land held by a municipality depends upon the terms of the conveyance under which it was received. "While no particular words are necessary to the creation of a trust, some words in connection with attendant factors must point to a trust or none is established." *MacDonald* v. *Commissioners,* 268 Mass. 288. By a practical application of this principle the existence of a trust was established in *Ashuelot National Bank* v. *Keene, supra.* Similar considerations lead to a like conclusion in the present case in the opinion of a majority of the court. The court is unanimous, however, in holding that the position of the claimants as to a resulting trust is not thereby sustained.

The results which the grantors sought to accomplish were in part simple and easily understood if not so easily expressed with accuracy and completeness in a simple form of words. They clearly intended that "the totality of . . . rights, privileges, powers and immunities" with regard to the land conveyed which constitute complete property therein (Restatement, Property, vol. 1, s. 5, *comment* e) should be vested in the city so long as the city continued to use the land for the specified library purposes but that if and when the city should violate any of the conditions set forth in the provision for termina-

tion of the trust, all the interests of the city should be cut off and complete ownership of the land revested in the grantors or their successors in interest.

But the intent of the grantors respecting the effect of a discontinuance of the city's use of the land as a library when the discontinuance is completed, is not clearly expressed. The deed contains no provision in terms for such a contingency and in definite statement is wholly silent with reference to it. The clause setting forth the conditions for reversion of the property is fairly to be construed as limiting the conditions to voluntary action of the city in violation of the terms of the trust.

This construction is adopted with the fact taken into account that one of the grantors of the deed drew it and was a competent lawyer familiar with legal terminology. A use of the property "for any other purpose" than for a public library was obviously to be such a use voluntarily made by the city. The city might neither convey it nor devote it to other than library purposes in part or whole. The deed provides for reversion only upon the "breaking" of a condition, and in legal thought impossibility of performance is not within the scope of a breach, in which the idea of conduct in violation of a duty inheres. Regardless of the reverting clause, the city was bound to execute the trust according to its terms, in performance of its obligations to the beneficiaries of the trust. The clause was designed to strengthen the security for performance, by providing an extreme penalty for any breach of the trust, whether in use of the property contrary to the terms of the trust or in other ways disregarding the terms.

The city no longer has the use of the property, but this is because of the exercise of superior authority to which it has been obliged to submit. The State has taken the property by eminent domain, and it is not suggested that the city has acted in any way to aid in bringing about the acquisition by the State. Thus the city has committed no breach of the conditions, and the reverting clause therefore becomes inapplicable in determination of the controversy. The rights of the parties are those which would obtain if the clause had been omitted from the instrument of trust. The clause, applying only to breaches of the trust, is of no aid to show the donors' intentions in respect to modifications which involve no breach. On the other hand, the *cy pres* doctrine, to be later considered, is not concerned with violations of the trustee's duties, but is only a prescription for permitted changes.

The issue thus becomes, not what the result might be, under the reverting clause, if the city were not compelled to yield the site, but whether its loss dissolves the trust regardless of the clause. The city could make no uncompelled disposal of the property. An attempted disposal would dissolve the charity because of the force of the reverting clause. Without the clause a change not compelled by necessity would be unpermitted, but not a ground for terminating the trust. Thus the inquiry resolves itself into the question whether the proceeds of the taking by the State are impressed with the trust or whether the trust is so far defeated in its further maintenance and continuance as to have failed and become terminated. If it has failed, the fund reverts, as in any case of dissolution of a trust created for purposes which have been, or cannot be, fulfilled.

While there is no evidence to show that the grantors contemplated that the property might be lost to the city by eminent domain, yet they gave the deed in the possibility of such an occurrence, and in one aspect the inquiry is what the deed provides in the event the contingency transpired. As a statement of an elementary legal proposition, results as the effect of a deed may ensue which are unexpected or not contemplated or which are even contrary to expectation. What has been done and its effect, and not what would have been done if the effect had been contemplated or anticipated, is to be determined.

The doctrine of *cy pres* in charitable trusts has been often applied in our cases. The equitable principle is well settled that a general and primary purpose for the maintenance and continuance of a charity is expressed in the instrument declaring the trust although a subordinate and secondary plan for the mode of its administration or for features incidental to the general purpose may become impossible or impractical to execute. Whatever the doubts of its proper applicability and extension to the case of *Edgerly* v. *Barker*, 66 N. H. 434, it is there considered with much force and clarity of exposition. In more concise definement of the doctrine the court in *Biscoe* v. *Johnson*, 35 Ch. D. 460, 463, stated it thus: "If you do see a general intention of benefiting a certain class or number of people, who come within the ordinary definition of objects of charity, and you find that the particular mode the testator has contemplated of doing this cannot be carried out, and you are convinced that the mode is not so essential that you cannot separate the intention of the charity from that particular mode, then the Court says there is a general intention of charity, and as the mode has failed, the duty of the Court is, fa-

vouring charity as the Court always does, to provide another mode than that which the testator has pointed out, and which has failed."

If the logic that modification of minor or subordinate features which have become impossible or impractical to carry out are consistent with the donor's declaration of the trust, has a specious strain in it, yet to preserve the trust in its general purpose and plan, it is equitable to authorize them. It may be said that the deed was intended to be subject to the law applicable to control and govern it, even if the law was not known or in mind, and a rule that a charity shall not fail for loss of a minor feature in the absence of express declaration by the donor to the contrary, is properly invoked as one of reasonable justice, even although it may be of negligible aid to show actual intention. A policy to permit unforbidden modification in the case of charities when they are reasonably required for the due maintenance of the charities, has insistence amply sufficient to call for its adoption through the exercise of the regulatory process.

Tested by this method of treatment, the deed in question provides for no failure of the trust by reason of the loss *in invitum* of the property it conveyed. It created a trust and furnished the means for its execution and operation. The means have been converted into a fund which is available for the continued operation of the trust, in connection with other funds, in its essential charitable purpose. The exact location of the library is not a paramount consideration, or so ingrained in the pattern that its change produces a different trust in organic nature. Nor is the change one barred by the donors. The structural character of the trust remains unaffected and unimpaired, and only a new arrangement for furnishing its service is constituted by the change. No reasons practical or sentimental exist to demand that the site conveyed by the deed should be the only one which under all circumstances must be kept in order to keep alive the trust. *Borchers* v. *Taylor*, 83 N. H. 564, 570-572.

The cases of *Adams &c. Academy* v. *Adams*, 65 N. H. 225, discussed in *Borchers* v. *Taylor, supra,* and *Lyford* v. *Laconia,* 75 N. H. 220, are to be distinguished. In the former case the particular site was an essential feature of the general plan of the trust. In the latter case the issue was not whether the charity had failed by the taking of the site under eminent domain, but whether the donor's heir had an interest in the site, by virtue of a reverting clause in the donor's deed, which entitled him to more than an award of nominal damages as against the city which took the site.

As already stated, the deed here contains no clause for reversion

or forfeiture upon a taking by eminent domain. Where a deed of trust contains no reverting clause but merely provides that the property conveyed shall be used for a particular charitable purpose, the taking of the property by eminent domain "is not such a failure of the charity as to give rise to a resulting trust for the settlor. The proceeds received from the eminent domain proceedings constitute a substitute trust res". 2 Bogert, Trusts and Trustees, *s.* 418, *p.* 1281, citing *Lutes* v. *Railroad,* 158 Ky. 259, 263.

The city's duty to use the fund in connection with a new public library carries with it the duty to observe all the terms of the trust as approximately and completely as is reasonably possible in the construction and use of a new building. It appears to be practical for the special features set forth in the deed to be retained, including some displayed memorial of the benevolence of the donors in their gift for public library purposes.

It is not overlooked that the modification of the trust may not permit the gift to be maintained as a separate and concrete unit, to the same extent as its unmodified form furnished. The proceeds of the taking by the State may fall short of meeting the cost of a new site and building. But one of the donors and the successors in interest of the other one in 1928 recognized the possible inadequacy of the then existing building and agreed that the city might acquire adjoining land and might on the combined area erect a new building "sufficient for the immediate and long-time needs of a public library," in place of the existing one. They thereby contemplated that the site might alone be the physical memorial of the gift and might be enlarged. They have thus consented to area and structure not wholly contributed by the donors. Without holding that the consent was necessary to justify the modification now considered equitable, it definitely overcomes objection to a loss of the separate identity of the trust estate.

Whether the forfeiting clause of the deed applies to the proceeds of the property it conveyed and whether they may be followed in equity as subject to the clause, is an inquiry to which the result reached dispenses with answer.

The contention of the claimants that the result reached has the effect of taking their property for a public use without compensation, in violation of the Federal Constitution, is untenable.

*Exceptions overruled.*