**UNITED STATES v. 263.5 ACRES OF LAND, MORE OR LESS, MARIN COUNTY, CAL., et al.**

No. 22190–R.

District Court, N. D. California, S. D.

March 28, 1944.

M. Mitchell Bourquin, Sp. Asst. to the Atty. Gen., for plaintiff.

Harold Jos. Haley, Dist. Atty., and Thomas P. Boyd, Deputy Dist. Atty., both of San Rafael, Cal., for defendant County of Marin.

Gregory, Hunt, Melvin & Faulkner and John B. Molinari, all of San Francisco, Cal., for defendants Pedrotti heirs.

ROCHE, District Judge.

Hamilton Field is a large air base located in Marin County, California. In 1942 the United States, wishing to expand the Field, condemned certain adjoining property. This is a controversy, growing out of such condemnation proceedings, between Marin County and the heirs at law of Matthias Joseph Pedrotti, deceased. Both the County and the Pedrotti heirs assert the right to receive the sum of money now on deposit in the Registry of the Court as payment for the condemned property, and base their claims on certain provisions of the deceased Pedrotti's will.

The record discloses that Matthias Joseph Pedrotti was a resident of Marin County wherein he owned a large farm. On November 9, 1933, Pedrotti died, leaving a will which contained the following provision:

"I give, devise and bequeath my home ranch at Ignacio, Marin County, California,

commonly known as the Pedrotti Ranch, containing 263 acres of land more or less, to the County of Marin. Said ranch shall be kept by said County of Marin, and the net income derived therefrom shall be used by said County of Marin for the aid and relief of crippled and blind bona fide residents of the County of Marin, who are in need. Said County of Marin shall at no time sell or mortgage said property, or attempt to sell or mortgage the same, and in the event that said County of Marin should attempt to sell or mortgage or sell or mortgage the said property, then it shall forfeit all rights to said property, and said property shall forthwith revert to, and become the property of my heirs at law, according to the laws of succession of the State of California.

"This gift to said County of Marin is given in memory of my deceased wife, Henrietta G. Pedrotti, and said ranch shall, upon its distribution to said County of Marin, be known as, and called the Henrietta G. Pedrotti Memorial Farm."

In accordance with this devise the ranch was distributed to Marin County which accepted it under the terms of the will, setting the income up in a special fund called the "Pedrotti Memorial Fund" and using it for the necessary expenses of the ranch and the aid of the needy crippled and blind who were bona fide residents of the county. No attempt to sell or mortgage the property was made by the County of Marin and it continued to comply with the provisions of the will until May 21, 1942, on which date the United States filed its complaint in condemnation and declaration of taking of the property and deposited the estimated just compensation therefor in the Registry of the Court.

▮ That Matthias Pedrotti created, by his will, a valid charitable trust is not seriously questioned by either of the litigants, and the court so finds. The only question before the court is the effect upon such trust of the condemnation proceedings. Since the testator failed to provide specifically for such contingency the answer must be found in an interpretation of the trust.

▮ The will provides that the ranch should be kept by the County of Marin and that in case of a sale or mortgage or attempted sale or mortgage, the property should revert to the testator's heirs at law. Condemnation is undoubtedly a "sale" in a certain sense in that it is a compulsory parting with property whereby the condemnor stands towards the owner as buyer towards seller. In re Board of Supervisors, Co.Ct., 6 N.Y.S.2d 732. And had Marin attempted to get the United States to condemn the fee instead of a lesser interest there might well have been a violation of the trust condition because there would have been a voluntary effort to dispose of the property. The record shows no such attempt, however, so the question is whether the term "sale", as used by the testator, may be fairly interpreted to include such an involuntary parting with the property as is here involved. The Pedrotti heirs say that it may. They take the position that the testator, by his prohibition, created a limitation upon the life of the trust; that condemnation comes within the ban as an enforced sale and consequently the trust has terminated, giving them the right to the condemnation payment in lieu of the land.

▮ Counsel for Marin, on the other hand, argue that Pedrotti had in mind a "sale" in the ordinary sense, a voluntary parting with property. The court's attention has not been directed to any case involving this precise point but applying the familiar rule that words are to be given their usual and customary meaning unless a different meaning is clearly apparent, the court finds that the testator did not intend to include condemnation in the term "sale". There remains, then, the question whether preservation of the ranch as a memorial is such an essential object of the trust that its impossibility will cause the trust to fail. If so, the Pedrotti heirs and not Marin are entitled to the condemnation award.

▮ Charitable trusts are favorites of the law and will be preserved unless to do so clearly violates the terms of the trust. If changing circumstances cause the original charitable purpose to fail, or render the mode of executing the trust impossible, equity will not allow the trust to fail if there can be gathered from the instrument a general charitable intent. If the trustor's paramount purpose is charitable, even though he may have had other objectives in mind such as erecting a memorial or preserving the family homestead, the court can, by means of the cy pres doctrine, apply the trust to a closely allied purpose. While cy pres has been more frequently used, perhaps, to save the trust when the charitable object has failed, it has also been

applied in situations analogous to the present one.

 A careful reading of Matthias Pedrotti's will discloses the intent to aid the crippled and blind of Marin County and at the same time perpetuate the memory of his deceased wife. To accomplish this he devised his home ranch to the county. Undoubtedly he wished the home place preserved but condemnation has made that impossible. The mode of executing the trust has failed. The question then is, Is the mode of such paramount importance that its failure has destroyed the trust? The court thinks not.

In 1940 the Supreme Court of Pennsylvania considered a similar situation in In re Wilkey's Estate, 337 Pa. 129, 10 A.2d 425, 427. There the testatrix had devised her family homestead to the Presbyterian Church in Philadelphia for the purpose of having erected thereon a memorial church, her house to be used as the manse. Funds for the building were likewise bequeathed. The real property was condemned but the trust was not thereby allowed to fail. In applying the cy pres doctrine the court said: "The rule of equity on this subject seems to be clear, that when a definite charity is created, the failure of the particular mode in which it is to be effectuated does not destroy the charity for equity will substitute another mode, so that the substantial intention shall not depend on the insufficiency of the formal intention." The same conclusion was reached by the Supreme Court of New Hampshire in State v. Federal Square Corporation, 89 N.H. 538, 3 A. 2d 109, 114. This case, decided in 1938, also concerned the effect on a charitable trust of condemnation of the trust property. The court, applying cy pres, treated the condemnation award as a substitute trust res. In the course of the opinion the court declared: " * * * the deed in question provides for no failure of the trust by reason of the loss in invitum of the property it conveyed. It created a trust and furnished the means for its execution and operation. The means have been converted into a fund which is available for the continued operation of the trust, in connection with other funds, in its essential charitable purpose. The exact location of the library is not a paramount consideration, or so ingrained in the pattern that its change produces a different trust in organic nature. * * * The structural character of the trust remains unaffected and unim-paired, and only a new arrangement for furnishing its service is constituted by the change."

So here. Instead of the ranch there is now a fund, the income from which can be used for the continued operation of the trust. Counsel for Marin have declared that it is the county's plan to invest the award and place the income in a memorial fund to be used for the aid of the county's needy crippled and blind. Only the source of the income will be changed and that is not sufficient to destroy the trust.

Judgment will accordingly be entered in favor of the defendant County of Marin and against the defendants the Pedrotti heirs, upon findings of facts and conclusions of law.