[Civ. No. 6577. Fourth Dist. Dec. 6, 1962.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Plaintiff, v. CITY OF FRESNO, Defendant and Appellant; HOWARD H. CHANDLER et al., Defendants and Respondents.

John H. Lauten, City Attorney, Spencer Thomas, Jr., James A. Gardner, and Alan D. Davidson, Deputy City Attorneys, for Defendant and Appellant.

Holloway Jones, Jack M. Howard, Joseph F. De Martini and William C. De Martini for Plaintiff and Respondent.

Crossland, Crossland & Richardson and William C. Crossland for Defendants and Respondents.

COUGHLIN, J.—The issue for determination in this action was whether the owner of a determinable fee estate in a parcel of real property, which was part of a larger parcel conveyed for a limited use, and which subsequently was taken through eminent domain proceedings, or the owner of the reversionary interest in the property taken, was entitled to the compensation awarded for such taking. The trial court found in favor of the latter. The primary issues on appeal are threefold, viz., (1) whether the evidence sustains a finding that the determinable fee estate had terminated before the taking in question, thus entitling the owner of the reversionary interest to the award; (2) whether the subject taking, by preventing further use of the property for the limited purpose designated in the grant, entitled the owner of the reversionary interest to the award even though the determinable fee had not previously terminated; and (3) whether, under the evidence in this case, expiration of the determinable fee was imminent and therefore authorized recovery of the award, in whole or in part, by the owners of the reversionary interest.

By a deed dated February 26, 1929, Mr. and Mrs. Wilbur F. Chandler conveyed a large parcel of property to the City of Fresno for use as an airport. This is known as the Chandler grant. The deed effecting such conveyance provided that the property therein described was conveyed to the city "for and during the time . . .[it] shall be used as a Municipal Air Port, and for no other purpose." By subsequent agreement, the parties to this deed modified the terms thereof respecting the use of the property theretofore conveyed by providing that title and ownership thereto "shall be for the time said real property shall be used for municipal purposes including municipal airport purposes and for no other."

The site in question approximated 100 acres; additional adjoining property was acquired by the city; and the total thereof has been used as an airport known as Chandler Air Field.

On July 9, 1959, the State of California commenced the instant action, an eminent domain proceeding, to acquire an approximate 2-acre strip across the northeasterly part of the airport for highway purposes. This strip severed the airport property, leaving a 3-acre triangular parcel to the northeast, and a 191-acre parcel to the south and west. The City of

Fresno and the owners of the reversionary interest, who acquired the same through inheritance and are known as the Chandler heirs, were named defendants. The trial court approved the taking by the state; found that the city's estate in the property taken had been terminated; determined that the value of the property taken was $12,172.50; concluded that the heirs alone were entitled to the award for this amount; found that the city had been damaged by the taking in that it has been required to make certain changes with respect to its airport facilities on account thereof; and allowed it $3541.91 as compensation for such damages. Judgment was entered accordingly. The city appeals and, as appellant herein, contends that it should have been awarded the value of the property taken. The Chandler heirs resist the appeal and, as respondents herein, contend that the award to them was proper.

The nature of the estate conveyed to the city by the deed from Mr. and Mrs. Chandler, as modified by the subsequent agreement between them, is a factor material to a consideration of the arguments presented by the parties hereto in support of their respective contentions. Each of them assumes that the estate so conveyed was a determinable fee and address their arguments accordingly. Without passing upon the correctness of this assumption, we will accept the same for the purpose of this decision. An appreciation of its materiality to the issues at hand requires a consideration of the distinction between a determinable fee estate and an estate upon condition.

A determinable fee in real property is one subject to a contingency upon the happening of which the fee terminates *ipso facto* and title to the property reverts to the grantor. (*Renner* v. *Huntington etc. Oil & Gas Co.*, 39 Cal.2d 93, 98 [244 P.2d 985]; *Henck* v. *Lake Hemet Water Co.*, 9 Cal.2d 136, 140 [69 P.2d 849]; *Taylor* v. *McCowen*, 154 Cal. 798, 803-804 [90 P. 351]; *Alamo School Dist.* v. *Jones*, 182 Cal. App.2d 180, 184 [6 Cal.Rptr. 272].) No notice, declaration of forfeiture or other act of the grantor is required to effect such termination or reversion. (*Renner* v. *Huntington etc. Oil & Gas Co.*, *supra*, 39 Cal.2d 93, 98; *Henck* v. *Lake Hemet Water Co.*, *supra*, 9 Cal.2d 136, 140.) These factors distinguish a determinable fee estate from an estate on condition, usually referred to as a condition subsequent. The latter estate also is subject to a contingency but the

happening thereof does not effect termination of the estate *ipso facto;* confers merely a right to terminate; and divestiture occurs only upon positive action by the grantor, after condition broken, indicating an election to terminate. *(Henck* v. *Lake Hemet Water Co., supra,* 9 Cal.2d 136, 140; *Taylor* v. *McCowen, supra,* 154 Cal. 798, 803; *Alamo School Dist.* v. *Jones, supra,* 182 Cal.App.2d 180, 185; Generally see 2 Witkin, Summary of Cal. Law [7th ed.] p. 949.)

▮ The reversionary interest of the grantor of a determinable fee has been defined as a possibility of reverter, while that of the grantor of an estate on condition has been defined as a right of reentry. *(Alamo School Dist.* v. *Jones, supra,* 182 Cal.App.2d 180, 184-185.) ▮ Under the common law neither the possibility of reverter nor the right of reentry was transferable, being considered a naked possibility. *(Johnston* v. *City of Los Angeles,* 176 Cal. 479, 485 [168 P. 1047]; 24 Cal. L. Rev. 512, 518.) However, in California, the transferability of the reversionary interest incident to a conditional estate has been effected by statute. (Civ. Code, § 1046; *Johnston* v. *City of Los Angeles, supra,* 176 Cal. 479, 485-486; *Alamo School Dist.* v. *Jones, supra,* 182 Cal.App.2d 180, 185.) Whether this statute applies to the reversionary interest incident to a determinable fee has been the subject of divergent views. *(Johnston* v. *City of Los Angeles, supra,* 176 Cal. 479, 486; *Victoria Hospital Assn.* v. *All persons,* 169 Cal. 455, 465 [147 P. 124]; 2 Witkin, Summary of Cal. Law (7th ed.) 974; 24 Cal. L. Rev. 512, 523; 18 Cal.Jur.2d 397, 398.) In the case at bar both parties assume transferability of the possibility of reverter attendant upon a determinable fee. No issue is raised respecting the Chandler heirs' ownership of the reversionary interest at hand. Neither is there any contention that such a reversionary interest may not be a subject of ownership.

The trial court found that the city acquired a determinable fee in the property conveyed to it by the Chandlers; that all of this property, except that portion thereof taken by the state for highway purposes, "has been used at all times and is now used by said City of Fresno for municipal purposes"; that an order authorizing the state to take immediate possession of the highway strip was made on July 17, 1959, and pursuant thereto physical possession thereof was taken on January 19, 1960; that, commencing on May 17, 1954, the city leased two billboard sites on the northeasterly corner of

the Chandler grant to an outdoor advertising company for private commercial advertising purposes; that these billboards did not interfere with the use of the Chandler grant for airport purposes; that on April 18, 1957, the City of Fresno adopted a master development plan for the use of Chandler Field; that this plan indicated a state highway use of that part of the airport included within the strip thereafter taken through the instant proceedings; that on September 7, 1958, the California Highway Commission adopted a resolution directing acquisition of this strip for highway purposes; that on January 13, 1960, the city commenced, and on January 18, 1960 completed removal of an airstrip boundary light as well as boundary fences which were located on the condemned parcel; and that "by reason of the facts hereinbefore found, the City of Fresno ceased to use Parcel 1 [the strip of land taken by the state] for municipal airport purposes or for any municipal purpose, and Parcel 1 ceased to be used for municipal purposes or municipal airport purposes."

The materiality of the finding of cessation of use lies in its association with the contention that the city's estate in the condemned property had terminated prior to or at the time of the taking; that upon cessation, title thereto ipso facto had reverted to the Chandler heirs; and that, for this reason, they are entitled to the award. The finding in question is not directed to any specific point of time. Insofar as it refers to the use of the property after the taking occurred its significance will be considered later in this opinion. Insofar as it relates to the use of the property prior to the taking, the sufficiency of the evidence to support the same is attacked by the appellant City.

### SUFFICIENCY OF THE EVIDENCE

The finding of cessation of use, upon its face, is an inference drawn by the court from other facts which the respondent heirs contend fully support this conclusion, viz., that (1) the city leased the billboard sites for a nonmunicipal purpose; (2) adopted a master development plan for the airport which showed a prospective use of the condemned parcel for state highway purposes; and (3) removed therefrom an airstrip boundary light and a boundary fence before physical possession thereof was taken by the state. The appellant city contends that the inference in question is not supported by the facts relied upon. This contention is meritorious.

The billboards were not located within the condemned area. The trial court found that their use had not interfered with the use of the Chandler grant for airport purposes; was merely an incidental use; and that all of the property in the grant, except the condemned highway strip, "has been used at all times and is now used . . . for municipal purposes." Obviously the trial court believed, and in substance found, that in determining whether the estate of the city in the subject property had terminated because it was not used for municipal purposes, the use of the billboard sites for a non-municipal purpose, under the circumstances, was so trivial as to be of no legal consequence. This conclusion was proper. (See *City of Santa Monica* v. *Jones,* 104 Cal.App.2d 463, 469-470 [232 P.2d 55]; *Keating* v. *Preston,* 42 Cal.App.2d 110, 117 [108 P.2d 479]; *Los Angeles University* v. *Swarth,* 107 F. 798, 806 [46 C.C.A. 647, 54 L.R.A. 262].) Under the facts as found, the leasing of the billboard sites is not proof that the city had ceased to use the condemned strip for municipal purposes.

The master development plan adopted by the city for the airport proposed a development program realistically cognizant of the probability that the state might condemn the subject strip for highway purposes. Its adoption in no way constituted a relinquishment of the strip for use as a state highway, nor a declaration of the city's intention to terminate its estate therein. To the contrary, the city continued to use the same for airport purposes, as is shown by its inclusion within the airport boundaries enclosed by a fence, and its use as a location for one of the airstrip boundary lights. Although the city contemplated the future probable use of the property in question for a state highway, it did not consent thereto; resisted the action of the state to acquire the same; and presently insists on receiving compensation for damages resulting from the taking for such use. The fact that the city adopted the master development plan does not support an inference that it thereby ceased to use the strip in question for airport purposes.

The respondent heirs contend that, nevertheless, the removal and relocation of the airstrip boundary light from the condemned property constituted a cessation of its use for airport purposes; that these acts occurred prior to the state's entry into actual possession; that the condemned property was not taken until actual occupancy thereof, citing *City of Long*

*Beach* v. *Aistrup,* 164 Cal.App.2d 41, 46 [330 P.2d 282]; *People* v. *Joerger,* 12 Cal.App.2d 665, 668 [55 P.2d 1269], in support of this position; that, therefore, the city's estate therein had terminated and title thereto had reverted to them prior to the taking; and, consequently, that they were entitled to the award. Neither of the cases cited considered the time of taking in relation to facts such as are presented by the case at bar and do not control a decision in this case. ▉ In *People* v. *Klopstock,* 24 Cal.2d 897, 902 [151 P.2d 641], it was said:

"In fixing awards in condemnation cases compensation must be paid to the owners as their respective interests shall appear at the time when the taking of property for a public use is deemed to occur—at the date of the issuance of summons."

▉ In *People* v. *Peninsula Title Guar. Co.,* 47 Cal.2d 29, 32 [301 P.2d 1], the court referred to the general rule that title to condemned property passes when a final order of condemnation is made and filed and then added:

"In situations where it can be said that in addition to a mere taking of possession by the condemnor there is also such a substantial change in the status of the land taken and the condemnee's relation to it as to constitute, in effect, a divestiture for all practical purposes of all of the former owners' interest, the strict rule should not apply." (See also *City of Los Angeles* v. *Tower,* 90 Cal.App.2d 869, 876 [204 P.2d 395].)

▉ Although removal of the light from the property in question antedated physical occupancy thereof by the state, both the act of removal and the act of occupancy were part of a single transaction. The removal occurred in the course of the taking; was part of the proceeding resolved by a final order of condemnation which vested title in the state (Code Civ. Proc. § 1253); and may not be considered as an expression of an intention to cease using the property for airport purposes independent of the taking ultimately effected. By stipulation, the city was awarded damages for expenses incurred in removing and relocating the airstrip light. The respondent heirs agreed to this payment stating: "We are willing to stipulate it is theirs, but we are not willing to stipulate it is theirs as part of the fee, but the controversy between us is who is entitled to damage and damages for the taking of the land." Regardless of the limitation

placed upon this stipulation, the fact remains that the city was reimbursed for the expense it had incurred because the light in question, which was owned by it, was located on and a part of the land being taken by the state. Removal and relocation of the boundary fence from the condemned property was made under similar circumstances. These facts do not support an inference that the city ceased to use the condemned property for airport purposes prior to the taking thereof which resulted in an award of compensation therefor.

### Cessation of Use Upon Taking

As the facts found by the court do not support an inference that the city's determinable fee in the condemned property terminated before the taking by condemnation, the remaining issue for consideration is whether the termination thereof effected by the taking, which simultaneously terminated the reversionary interest, entitled the owners of the land to the award in question. The respondent heirs contend that the city's interest in the condemned property was limited to that period of time during which it used the same for a designated purpose; that the taking by the state rendered the property incapable of further use for that purpose; that upon cessation of use for such purpose the period of time in question expired and the city's estate *ipso facto* terminated; that the cause of cessation of use resulting in such expiration is of no legal consequence; that compensation is paid for future and not for past interests in property; that the heirs were the owners of the only future interest in the subject property because upon termination of the city's interest therein title thereto would revert to them; and, therefore, they alone were entitled to compensation for the taking. This contention fails to distinguish between a voluntary nonuse of property for a specific purpose by the owner of a determinable fee, and the involuntary nonuse thereof effected by its taking through condemnation which prevents further use for any purpose by either the owner of the determinable fee or the owner of the reversionary interest (See *United States* v. *25.88 Acres of Land etc. Kings County,* 49 F. Supp. 250, 256; *State* v. *Federal Square Corp.,* 89 N.H. 538 [3 A.2d 109, 112]); and further fails to take into consideration the fact that the taking of the property in question terminated not only the reversionary owner's future possible use thereof but also the city's future actual use.

The city contends that condemnation of the subject property terminated its estate therein; that the act effecting such termination constituted a taking of that estate; and that it is entitled to compensation therefor. In support of its position, the city cites the decisions in three cases, i.e., *Romero* v. *Department of Public Works,* 17 Cal.2d 189, 194 [109 P.2d 662]; *People* v. *City of Los Angeles,* 179 Cal.App.2d 558, 569 [4 Cal.Rptr. 531]; *City of Santa Monica* v. *Jones, supra,* 104 Cal.App.2d 463, 473. Each of these cases concerns the disposition of a condemnation award for the taking of property held under a deed conveying a fee subject to a contingency; in each the court considered the fee in question to be one upon a condition subsequent; and in each determined that, under the circumstances there existing, the owner of the conditional estate, rather than the owner of the reversionary interest, was entitled to the whole of the award. The respondent heirs contend that the decisions in the cited cases do not control the decisions in the case at bar because the former involved only estates upon a condition subsequent while the latter involves an estate upon limitation, i.e., a determinable fee. They direct our attention to those parts of the opinion in two of these cases, viz., *People* v. *City of Los Angeles, supra,* 179 Cal.App.2d 558, 570, and *City of Santa Monica* v. *Jones, supra,* 104 Cal.App.2d 463, 473, wherein the court notes the distinction between a determinable fee, which terminates *ipso facto* upon the happening of the designated contingency, and a fee subject to a condition, which does not terminate upon the happening of the designated contingency but abides a subsequent reentry or other positive assertion of title by the reversionary owner; holds that the mere happening of the contingent event upon which the estates there under consideration were subject, without reentry or other assertion of title prior to condemnation, would not terminate these estates; and concludes that the owners thereof, rather than the owners of the reversionary interest in the property taken, were entitled to the compensation allowed. The respondents urge, therefore, that the principles applied in the cited cases do not apply to the instant case because the estate here under consideration is a determinable fee, the termination of which was not dependent upon reentry prior to condemnation. They also contend that the reversionary owners in the cited cases were not awarded compensation upon condemnation of the properties there under consideration, which were held under

fees subject to conditions subsequent, because they owned merely a right of reentry which, as variously expressed by respondents, is not "property," an "interest in propery," nor "an estate in property"; that the reversionary owners in the instant case, i.e., the heirs, have an estate in property rather than a mere right of reentry; and that, for this additional reason, the decisions in the cited cases do not control the decision in the case at bar.

Nevertheless, there are legal principles approved and applied in the cited cases which are as applicable to a condemnation situation involving a determinable fee as to one involving a fee upon condition subsequent. In *Romero* v. *Department of Public Works, supra,* 17 Cal.2d 189, 194, where property acquired by condemnation had been conveyed upon condition that it should be used for railroad purposes, and in the event that it was not so used that it should "revert to and become vested in" certain designated persons, the court said:

"When the state in the condemnation proceeding acquired the title to the 60 foot strip for highway purposes it thereby prevented its use for railroad purposes. As to so much of said property, the condition that it should be used for railroad purposes became impossible of further performance by operation of law. In other words, the public necessity for highway purposes as to that portion which was conclusively established in the condemnation proceeding, prevented further performance of the condition. The authorities generally are to the effect that the owner of the possibility of a reverter prior to a breach of the condition is not entitled to compensation when the property is taken under the law of eminent domain. Such cases hold that the possibility of voluntary abandoment by non-user is so remote and improbable that it has no substantial value to be estimated in a condemnation proceeding. They recognize, however, that the owner of the fee or the reversionary interest should have a separate valuation of his interest where the land taken has some special value to him, as where the underlying lands are shown to be mineral bearing or otherwise of value separately from the use of the surface of the land; but that otherwise the law will not take notice of the separate value of the fee and of the user where there is no substantial difference in their values, and if, in such case, at the time fixed for the valuation the reversion has not occurred, the reversionary interest is said

not to have any compensable value in a condemnation proceeding. (*Southern Pac. R.R. Co.* v. *San Francisco Sav. Union*, 146 Cal. 290 [79 P. 961, 106 Am.St.Rep. 36, 2 Ann. Cas. 962, 70 L.R.A. 221] ; *City of San Gabriel* v. *Pacific Elec. Ry. Co.*, 129 Cal.App. 460 [18 P.2d 996] ; *Lutes* v. *Louisville & Nashville Railroad Co.*, 158 Ky. 259 [164 S.W. 792] ; Nichols, Eminent Domain, 2d ed., vol. 1, p. 243; see also *Lyford* v. *City of Laconia*, 75 N.H. 220 [72 A. 1085, 139 Am.St.Rep. 680, 22 L.R.A. N.S. 1062.)''

In *People* v. *City of Los Angeles, supra*, 179 Cal.App.2d 558, 575, where property condemned for state highway purposes was part of the land conveyed to a city upon condition that it be used as a park, the deed effecting such conveyance declared that whenever any part of that land shall cease to be used as a park, it shall immediately revert to the grantors, and the owner of the reversion appealed from a judgment denying him any part of the compensation awarded for the taking, the court said:

''Any reversionary right appellant may have had under the 1898 deed was extinguished at the time the state condemned the interest of the city, for the seizure was of the entire title by the single act of appropriation. At that moment there had been no disuse and the estate being enjoyed by the city might otherwise have continued forever. The right of appellant was remote, speculative and a mere possibility of no value capable of estimate. [Citations] Of interest is *First Reformed Dutch Church* v. *Croswell*, 210 App. Div. 294 [206 N.Y.S. 132], cited in *City of Santa Monica* v. *Jones*, 104 Cal.App.2d 463 [232 P.2d 55], in which the court held, even under a deed containing a limitation, that the seizure was of the entire title and at the moment of appropriation there had been no disuser, as a result of which the rights of the heirs in reversion were a mere possibility, possessed of no value capable of estimate.

''The record is silent relative to the value of appellant's reversionary right—indeed, under the cases just cited it would appear that valuation would be very nearly impossible to estimate. Appellant not only made no claim to a reversionary right, separate and apart from that of the land in fee and sought no award for its taking, but he offered no proof thereon. The court did not err in finding that all that was of value was the estate of the city for which it was en-

titled to compensation, and that appellant was entitled to no part thereof.''

In *City of Santa Monica* v. *Jones, supra,* 104 Cal.App.2d 463, the property condemned had been conveyed to a railroad company for railroad right-of-way purposes under a deed which the court assumed transferred an estate upon condition; the appellants were heirs of the grantor; judgment was entered awarding to the grantee the total condemnation compensation allowed; and in the course of its opinion affirming this judgment, the court said [p. 472]:

''To us it seems altogether probable that appellants filed their answer upon the assumption that as the property taken by the city could not in the future be used for railway purposes by the company, for that reason alone it would revert and hence that appellants were entitled to the award. Any such view, however, is directly contrary to well-established principles of law.

''As was said in the leading case of *First Reformed Dutch Church* v. *Croswell,* 210 App. Div. 294 [206 N.Y.S. 132] (appeal dismissed 239 N.Y. 625 [147 N.E. 222]), 'The premises in question did in fact cease to be used for the maintenance of a church thereupon. The disuser, however, was a consequence, not a cause, of a loss of title by the plaintiff. The city of New York, in condemnation proceedings, seized the estate of the plaintiff. It also seized the rights of reverter belonging to the heirs at law of the grantors. The seizure was of the entire title, wherever resident, by a single act of appropriation. There was, therefore, no interval of time between the seizure of the plaintiff's estate and the seizure of the rights of the heirs at law during which there could have been a reverter of title to the heirs because of a church disuser of the premises necessarily consequent upon the seizure. At the moment of appropriation there had been no disuser. At that moment the estate then being enjoyed by the plaintiff might have continued forever. At that moment the rights of the heirs were mere possibilities. These rights possessed no value capable of estimate. All that was valuable was the estate of the plaintiff. Therefore the money paid in by the city of New York should be paid to the plaintiff as for the only thing of value taken.' . . . [p. 476] 'In the First Reformed Dutch Church case it was held that even in the case of a deed containing a limitation rather than a condition,

the condemnation terminated the rights of reverter of the heirs.' ''

The respondents contend that the decision in *First Reformed Dutch Church* v. *Croswell, supra,* 210 App. Div. 294 [206 N.Y.S. 132], which is cited in both of the foregoing District Court of Appeal opinions, is not an authority in this state for the proposition therein set forth because it is based on the common law rule, which is the law in New York, that the reversionary interest under a deed conveying a determinable fee is not an interest in property, but a mere inchoate or nebulous right, and this is not the law in California. However, a cursory reading of the New York case, i.e., *First Reformed Dutch Church* v. *Croswell, supra,* 210 App. Div. 294 [206 N.Y.S. 132], discloses the error of respondents' analysis. The New York court, in the cited case, classifies the rights of the owners of the reversionary estate there under consideration at ''the moment of appropriation'' as a ''mere possibility,'' because at that moment ''the estate then being enjoyed by the plaintiff [the owner of the determinable fee] might have continued forever.'' *First Reformed Dutch Church* v. *Croswell, supra,* 210 App. Div. 294 [206 N.Y.S. 132, 134].)

The respondent heirs also attack the decision in *Lyford* v. *City of Laconia,* 75 N.H. 220 [72 A. 1085], which was referred to in *Romero* v. *Department of Public Works, supra,* 17 Cal.2d 189, 195; claim that it is not authority under the law of this state for the rule set forth in the *Romero* case; and advance the same arguments urged in support of their attack upon the decision in the *First Reformed Dutch Church* v. *Croswell, supra,* 210 App. Div. 294 [206 N.Y.S. 132]. Again, however, their analysis fails to consider significant parts of the opinion upon which the questioned decision is based wherein the court said:

''But it is clear, and in fact is conceded, that the courts of this country have at least understood determinable fees to be possible estates, and the possibility of reverter dependent thereon a valid interest.

''. . . . . . . . . . . .

''Whether the event upon which the plaintiff might come into ownership of the land would ever happen was mere speculation. There was no method by which the value of the interest could be assessed which would rise above the dignity of a guess. The plaintiff did not own the land taken. He

was not an owner in fee, in reversion, or in remainder. He had no subsisting title in the land, but only a possibility that it might revert to him by the happening of the event upon which the estate of the society was determinable. . . . 'His possibility of interest is too remote and contingent to be the subject of an estimate of damages by a jury.' '' *(Lyford* v. *City of Laconia, supra,* 75 N.H. 220 [72 A. 1085, 1089].)

 Two of the California cases heretofore cited, viz., *Romero* v. *Department of Public Works, supra,* 17 Cal.2d 189, 195, and *People* v. *City of Los Angeles, supra,* 179 Cal. App.2d 558, 575, distinctly declare that, in the absence of exceptional circumstances, the value of a reversionary interest incident to an estate upon a condition subsequent, prior to the happening of the event upon which the estate is contingent, is incapable of ascertainment in a condemnation proceeding because the possibility of reversion is speculative and remote. The reason for this rule applies with equal force to the reversionary interest incident to a determinable fee, i.e., a possibility of reverter, as to the reversionary interest incident to a fee upon condition subsequent, i.e., a right of reentry. In either event the possibility of reversion is speculative and remote.

At the time of the taking in the instant case the city was using the subject property for airport purposes; it then had a right to do so for an indefinite, unlimited, unforecastable period of time; this right was an interest in the property taken, and the taking of that property terminated this interest. *(People of Puerto Rico* v. *United States,* 132 F.2d 220, 221; *Joint School Dist. No. 1, Town of Greenfield* v. *Bosch,* 219 Wis. 181 [262 N.W. 618, 621].) Simultaneously the taking also terminated the reversionary interest of the respondent therein. Termination was effected by merger of both interests in the fee acquired by the state. Thus, in acquiring the property the state acquired both of these respective interests. *(People* v. *City of Los Angeles, supra,* 179 Cal.App.2d 558, 575; *People of Puerto Rico* v. *United States, supra,* 132 F.2d 220, 222.) Termination, merger and acquisition were simultaneously effected by a single act of appropriation.

By constitutional mandate ''Private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner.'' (Cal. Const., art. 1, § 14.) Under settled principles,

just compensation for the taking of property is equivalent of its market value. *(People* v. *Ricciardi,* 23 Cal.2d 390, 401 [144 P.2d 799] ; *Sacramento etc. R. R. Co.* v. *Heilbron,* 156 Cal. 408, 409 [104 P. 979].) In the instant case the state has paid into court the market value of the property taken. Both the city and the Chandler heirs were the owners of that property, i.e., of the combined interests constituting the total fee acquired. Therefore, the real issue at hand concerns a determination respecting the market value of these respective interests, i.e., the market value of the determinable fee and of the reversionary estate. (See Rest., Property, § 53a.)

Under the law and the evidence in this case the interest of the Chandler heirs in the property taken, the possibility that the title thereto might revert to them at some unforecastable time in the future, was of such a nebulous nature that it had no legally estimable market value. *(Romero* v. *Department of Public Works, supra,* 17 Cal.2d 189, 194; *People* v. *City of Los Angeles, supra,* 179 Cal.App.2d 558, 575; *Fifer* v. *Allen,* 228 Ill. 507 [81 N.E. 1105, 1109] ; *Lyford* v. *City of Laconia, supra,* 75 N.H. 220 [72 A. 1085, 1089] ; *State* v. *Cooper,* 24 N. J. 261 [131 A. 2d 756, 764] ; *In re Certain Premises in Block 4987 etc. New York,* 265 App. Div. 875 [38 N.Y.S. 2d 25, 26] ; *First Reformed Dutch Church* v. *Croswell, supra,* 210 App. Div. 294 [206 N.Y.S. 132, 134] ; *Beard's Erie Basin* v. *People of New York,* 142 F. 2d 487, 489] ; *People of Puerto Rico* v. *United States, supra,* 132 F. 2d 220-222.) As a consequence, the total award should be paid to the city.

The foregoing conclusions are dictated by approved legal principles applied in pertinent cases by courts of this state, and of other jurisdictions. *(Romero* v. *Department of Public Works, supra,* 17 Cal.2d 189, 195; *People* v. *City of Los Angeles, supra,* 179 Cal.App.2d 558, 574-576; *City of Santa Monica* v. *Jones, supra,* 104 Cal.App.2d 463, 472; *United States,* v. *53 1/4 Acres of Land, More or Less, etc. Kings County, N.Y.,* 139 F.2d 244, 247; *People of Puerto Rico* v. *United States, supra,* 132 F.2d 220, 221-222; *United States* v. *16 Acres of Land, etc. Mass.,* 47 F.Supp. 603, 604; *Lyford* v. *City of Laconia, supra,* 75 N. H. 220 [72 A. 1085, 1089] ; *State* v. *Cooper, supra,* 24 N. J. 261 [131 A. 2d 756, 761-764] ; *First Reformed Dutch Church* v. *Croswell, supra,* 210 App. Div. 294 [206 N.Y.S. 132, 134] ; *Joint School Dist. No. 1, Town of Greenfield* v. *Bosch, supra,* 219 Wis. 181 [262 N. W.

618, 620-621]; see also 81 A. L. R. 2d 570; Rest., Property, § 53.)

The respondent heirs further contend that they are entitled to the total award under the doctrine of imminent reversion. Where condemned property is held under a deed conveying an estate subject to a contingency, and it is probable that, for some legal reason, title thereto will vest in the reversionary owners within a reasonably short time, i.e., where a reversion is imminent, compensation for the taking is paid to the reversionary owners either in whole or in part, depending upon the value of the reversionary estate. *(People* v. *City of Los Angeles, supra,* 179 Cal.App.2d 558, 574; *City of Santa Monica* v. *Jones, supra,* 104 Cal.App.2d 463, 465, 467, 474; *Chew* v. *Commonwealth,* 400 Pa. 307 [161 A. 2d 621]; *United States* v. *2,184.81 Acres of Land,* 45 F. Supp. 681; Rest., Property, § 53(c).) In substance, the doctrine of imminent reversion authorizes a showing that a particular reversionary interest has a legally ascertainable value because of the probability that reversion will occur within a reasonably short time. This rule recognizes the legal difference between the probability of a reversion and the possibility of a reversion. *(Chew* v. *Commonwealth, supra,* 400 Pa. 307 [161 A. 2d 621].) There is no evidence in the instant case which would support a finding of the probability that title to the subject property would vest in the respondent heirs within a reasonably short time following the condemnation, if condemnation had not occurred. The heirs relied upon the fact that the city had adopted a master development plan which indicated the probable use of the strip in question as a state highway. However, the adoption of this development plan is not evidence that the city intended to relinquish its use of that strip for such a purpose other than through condemnation proceedings. As heretofore noted, the taking by condemnation did not effect a reversion of the property in the Chandler heirs. Consequently, the probability of such a taking did not establish the probability of such a reversion. The subject contention is without merit. (Generally see *City of Santa Monica* v. *Jones, supra,* 104 Cal.App.2d 463, 475; *Carter* v. *New York Cent. R. Co.,* 73 N. Y. S. 2d 610.)

The respondents request this court to revise certain findings of the trial court. Our conclusion, as expressed in the

foregoing opinion, renders the requested revision inappropriate and unnecessary.

Other contentions made by the appellant in support of a reversal need not be considered. However, the city has stipulated that its use of the award may be limited to airport and municipal purposes. A provision in the judgment effecting this stipulation would be proper. *(State* v. *Federal Square Corp.*, 89 N. H. 538 [3 A. 2d 109, 114] ; *United Baptist Convention* v. *East Weare Baptist Church*, 103 N.H. 521 [176 A. 2d 325, 327-328] ; *State* v. *Cooper, supra*, 24 N. J. 261 [131 A. 2d 756, 757] ; *In re Cook's Will*, 243 App. Div. 706 [277 N.Y.S. 26].)

The judgment appealed from is reversed with instructions to enter judgment in harmony with the views expressed herein.

Griffin, P. J., and Shepard, J., concurred.

A petition for a rehearing was denied January 2, 1963, and respondents' petition for a hearing by the Supreme Court was denied January 30, 1963. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.